[Nos. C037445, Third Dist. May 5, 2004.]

CITY OF LODI, Plaintiff and Respondent, v. RANDTRON, Defendant and Appellant.

[Nos. C038921, Third Dist. May 5, 2004.]

CITY OF LODI, Plaintiff and Appellant, v. RANDTRON, Defendant and Appellant.

338

342

COUNSEL

Horvitz & Levy, Peter Abrahams, John A. Taylor, Jr.; Gibson, Dunn & Crutcher, Daniel S. Floyd and Clifton J. McFarland for Defendant and Appellant.

Bill Lockyer, Attorney General, Donald A. Robinson, Supervising Attorney General, as Amici Curiae on behalf of Defendant and Appellant.

D. Stephen Schwabauer, City Attorney; Kronick, Moskovitz, Tiedemann & Girard, Daniel J. O'Hanlon, Robin Leslie Stewart; Randall A. Hays; Envision Law Group, Michael C. Donovan, Cecelia C. Fusich, Brian R. Paget and John R. Till for Plaintiff and Respondent and for Plaintiff and Appellant.

OPINION

**BLEASE, Acting P. J.**—In this consolidated appeal, defendant Randtron, a dissolved corporation, appeals from the summary judgment and mandatory injunction issued in favor of plaintiff, the "People of the State of California." However, since the City of Lodi has no authority to act in the name of the People, we shall refer to plaintiff as the City of Lodi (hereafter the City).[1]

The injunction requires Randtron to comply with an administrative order directing it to abate an environmental nuisance on property it formerly owned and operated and to reimburse the City for all abatement and adjudication costs incurred by the City in connection with the cleanup of hazardous substances on the property. The order was issued pursuant to a city ordinance, entitled the Comprehensive Municipal Environmental Response and Liability Ordinance (MERLO) (Lodi Mun. Code, ch. 8.24),[2] which authorizes the City to investigate and remediate the contamination of its soil and groundwater.

---

[1] The City has brought this action in the name of the People of the State of California, purporting to represent the state in matters over which it has no authority. In so doing, it has erroneously entitled the case and mischaracterized its capacity to bring the present action. As we discuss in part I.C.3, the City has standing to bring either a civil or criminal action in the name of the People of the State of California only to abate a public nuisance. (Code Civ. Proc., § 731; Gov. Code, § 36900, subd. (a).) The City does not have authority to bring suit in the name of the People, as it does here, to enforce a summary administrative abatement order issued pursuant to a local ordinance that is preempted by state law. We therefore have changed the plaintiff's name to correctly reflect the City's limited standing.

[2] All further references to chapter 8.24 are to MERLO.

On appeal, Randtron contends the administrative abatement order is void and unenforceable because it was issued pursuant to MERLO, which is preempted by the state Carpenter-Presley-Tanner Hazardous Substance Account Act (HSAA) (Health & Saf. Code, §§ 25300–25395.40.),[3] and accordingly the City is also not entitled to the award of costs and attorney fees as the prevailing party.[4] We agree.

■ We hold that an administrative abatement action order issued pursuant to MERLO is preempted by HSAA because the City is a site listed by the Department of Toxic Substances Control (DTSC or department) for which the state has exclusive jurisdiction over all remedial response actions. (§ 25356, subd. (d).) Although a city may itself initiate and carry out the cleanup of a listed site upon notice to the department and approval of the response action plan by the department, HSAA does not authorize a city to issue an administrative order directing a Responsible Party (RP) to take remedial action. (§§ 25351.2, 25322, 25323.)

We shall reverse the summary judgment and injunction against Randtron, and the resulting costs and attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND[5]

### A. *Contamination of the City's Groundwater*[6]

In 1989, the City discovered, during a quality control sampling of its water, that its soil and groundwater were contaminated by tetrachloroethene and trichloroethene. These are solvents used in dry cleaning, metal degreasing, and other industrial applications, and are known carcinogens. Subsequent

---

[3] All further section references other than references to chapter 8.24 are to the Health and Safety Code.

[4] Pursuant to a sunset clause, the HSAA became inoperative on January 1, 1999. (§ 25395, subd. (a), repealed by Stats. 1999, ch. 23, § 1.) However, it was reenacted and went into effect on May 26, 1999, and was made retroactive. The actions, proceedings, orders, and agreements made or taken pursuant to the previous version of HSAA are therefore governed by the reenacted version. (Stats. 1999, ch. 23, §§ 2, 3.)

[5] We set forth those facts that are undisputed or that are indisputable. (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67 [105 Cal.Rptr.2d 652]; *Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 805 [85 Cal.Rptr.2d 459].)

[6] Much of the underlying facts of the contamination are matters of public record appearing in two reported decisions. (*Fireman's Fund Ins. Co. v. City of Lodi* (9th Cir. 2002) 302 F.3d 928 (*Fireman's Fund*); *Connecticut Indem. Co. v. Superior Court* (2000) 23 Cal.4th 807, 810–813 [98 Cal.Rptr.2d 221, 3 P.3d 868].)

investigations conducted by the DTSC[7] and the California Regional Water Quality Control Board (regional board) confirmed that these solvents were present in the City's groundwater and several City wells.

Meanwhile, beginning in fiscal year 1993–1994, the DTSC listed the "Lodi Groundwater Site" as a state hazardous waste site pursuant to section 25356.[8] The site was still listed in fiscal year 1999–2000, by the DTSC on its CalSites list of "Active Annual Workplan Sites" published by the DTSC.[9] The address of the site is described as the "the City of Lodi."

### B. *The City's Efforts to Remediate the Contamination*

In May 1997, the City and DTSC entered into a Comprehensive Joint Cooperative Agreement (joint agreement) pursuant to the DTSC's authority under HSAA. The parties agreed the City, in cooperation and consultation with DTSC, would assume the "lead agency" role with responsibility to prosecute actions against Potentially Responsible Parties (PRP's) or clean up the contamination itself and seek reimbursement from the PRP's. The joint agreement did not authorize the City to depart from the procedures required by HSAA.

In August 1997, the Lodi City Council enacted MERLO, which creates environmental investigatory tools and a remedial environmental response and

---

[7] The DTSC is the state agency responsible for ensuring that California's public health and environment are protected from the effects of hazardous substances. (§§ 25312, 25313, 25350–25359.7.)

[8] See *Fireman's Fund, supra,* 302 F.3d at page 935.

[9] The City disputed this fact in the trial court, arguing that Randtron's evidence was limited to the DTSC's "CalSites List," which the City contended is listed pursuant to different statutory authority. The City failed to mention what authority that might be and the document on which the City Groundwater Site is listed clearly states it is the DTSC's "List of Active Annual Workplan Sites FY 99–00." A fact sheet published by the DTSC on its CalSites Database defines "Annual Workplan" as "a confirmed release site where DTSC is actively working to remediate, either in a lead role or support capacity. These confirmed sites are generally high priority, high potential risk, and include military facilities, state 'funded' or Responsible Party (RP) lead, and National Priority List sites." The City site is listed as a high priority "RP" site. This language conforms to the statutory language requiring DTSC to annually publish and revise a list of hazardous substance release sites selected for response action under the state's HSAA. (§§ 25300, 25356, subds. (a)(1) and (b)(1).) DTSC must assign each listed site to a priority tier, listed alphabetically within each tier. (§§ 25327, 25356, subds. (b)(2) and (c).) The CalSites list where the City Groundwater Site is listed, sets forth high priority sites listed in alphabetical order by county. Moreover, the Ninth Circuit Court of Appeals recently found that the site has been a listed site since fiscal year 1993–1994. (*Fireman's Fund, supra,* 302 F.3d at p. 935.) The City has failed to introduce any evidence to demonstrate the site has been delisted, and makes no argument on appeal that the site is not listed. We therefore conclude the Lodi Groundwater Site is a listed site.

liability scheme. (Lodi Mun. Code, ch. 8.24.)[10] MERLO is similar in many ways to HSAA and its federal counterpart, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) (42 U.S.C. § 9601 et seq.), in addressing serious hazardous substance environmental contamination. MERLO declares that every environmental nuisance as defined in section 8.24.010(7) is a public nuisance. (§ 8.24.020.) It authorizes the enforcing officer[11] to determine whether there is an actual or threatened environmental nuisance, and to undertake any abatement action[12] necessary and proper to secure adequate protection of the public health, welfare and the environment. (§ 8.24.030(1).) MERLO further authorizes the enforcing officer to issue an administrative order directing any RP to undertake partial or comprehensive abatement actions. (§ 8.24.030(A)(1) and (2).) MERLO also specifies that for any site within the City that is listed pursuant to HSAA, abatement action orders must comply with section 25356, subdivision (c). (§ 8.24.030(A)(7).)[13]

## C. *Proceedings Against Randtron*

On November 5, 1998, the City's enforcing officer issued an administrative abatement action order to Randtron. (Docket No. A.O.-97-HOLZ-01-A.)[14] The order makes extensive findings of fact, concluding that Randtron and its agents created or threatened to create an environmental nuisance on the subject property, located at 1129–1300 Sacramento Street in the City. That property is located within the area encompassed by the Lodi Groundwater Site.[15]

---

[10] On November 17, 1999, Lodi City Council repealed Ordinance No. 1650 and reenacted an amended version of MERLO as Ordinance No. 1684, which became effective December 17, 1999. On appeal from a judgment granting or denying an injunction, the appellate court applies the law in effect at the time of decision. (*Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 654, fn. 3 [209 Cal.Rptr. 682, 693 P.2d 261].) All further references to MERLO are therefore to the amended version.

[11] The "Enforcing Officer shall mean the City of Lodi Director of Public Works, the Water/Wastewater Superintendent of the Public Works Department of the City of Lodi, and such other person(s) duly designated by the City Council of the City of Lodi." (§ 8.24.010(4).)

[12] "Abatement Action" is defined to include a variety of activities the enforcing officer determines are or may be necessary to respond to an existing or threatened environmental nuisance. The specified activities include, inter alia, the investigation and assessment of a known or suspected environmental nuisance, its causes and effects on the City, and the development and implementation of an environmental nuisance abatement plan. (§ 8.24.010(1).)

[13] This provision was not included in Ordinance No. 1650, the original version of MERLO.

[14] The abatement order was also issued to Oldco Holz, Inc., which is not a party to this litigation.

[15] Although the City disputed this fact in its statement of disputed facts filed in opposition to defendant's motion for summary judgment, the City is nevertheless bound by contrary allegations made in its complaint. (*Troche v. Daley* (1990) 217 Cal.App.3d 403, 409 [266

The order directed Randtron to undertake jointly and severally, specified abatement actions. The order further required Randtron to reimburse the City for all abatement action costs, including costs associated with the City's monitoring, oversight or review of Randtron's activities under the order. (§ 8.24.040.) The order advised Randtron that it had a right to contest the order and to request a hearing pursuant to section 8.24.060 of MERLO, and that its failure to make a timely request would result in the order becoming final and binding upon Randtron.

The final order was served on an officer of Randtron. Randtron did not take advantage of any of MERLO's review procedures and did not comply with the final order.

The City then filed a complaint against Randtron, seeking a mandatory injunction compelling Randtron to comply with the order and pay all abatement action costs due under the order. The parties filed cross-motions for summary judgment. The trial court ruled in favor of the City on both motions and issued the requested injunction. Randtron appeals from the judgment.

Following entry of judgment, the City filed a motion for costs and attorney fees as the prevailing party. The trial court granted the motion in part and denied it in part. Randtron appeals from the order making that award. The City cross-appeals from the part of the order denying a portion of its requested costs and attorney's fees.

On November 16, 2001, this court consolidated the two appeals.

DISCUSSION

I.

Preemption

Randtron contends the administrative abatement order is invalid because it was issued pursuant to MERLO, which it argues is preempted by state and

---

Cal.Rptr. 34] [judicial admission in a pleading is conclusive concession of the truth of a matter and has the effect of removing it from the issues]; *Valerio v. Andrew Youngquist Const.* (2002) 103 Cal.App.4th 1264, 1272 [127 Cal.Rptr.2d 436]; 4 Witkin, Cal Procedure (4th ed. 1997) Pleading, § 415, p. 512.) The City's complaint against Randtron in the present action alleges that "the People seek abatement of a public nuisance *in* and affecting the City of Lodi" and that the property, formerly owned and operated by Randtron, is located at "1129–1300 Sacramento Street, Lodi." As previously stated, the Lodi Groundwater Site encompasses the City.

federal law. With respect to state law, Randtron argues, inter alia, that HSAA occupies the field of hazardous waste contamination at release sites listed by DTSC pursuant to section 25356, and because the Lodi Groundwater Site is a listed sight, MERLO is preempted when applied to remedial response actions relating to that site.[16]

The City takes the position that MERLO is not preempted by HSAA because "HSAA is a remedial statute designed to fund and facilitate state governmental response to hazardous substance contamination problems." The City also contends the administrative order is not subject to collateral attack because Randtron failed to exhaust its administrative and judicial remedies to challenge the validity of the order. Randtron contends neither doctrine is applicable.

We agree with Randtron's basic assertions on both points, but differ in our analysis. We hold that HSAA preempts local regulation of response actions on sites listed pursuant to section 25356 because it vests the state with sole jurisdiction over removal and remedial actions of all listed sites. Because the contaminated site formerly belonging to Randtron is located within a listed site, the enforcing officer acted without jurisdiction when he issued the

---

[16] Because we reverse the trial court's summary judgment and injunction on this ground, we do not reach Randtron's other preemption theories or its claim relating to the existence of a triable issue of fact concerning the City's PRP status. We therefore deny as unnecessary, three of Randtron's Requests for Judicial Notice filed May 1, 2003, December 30, 2003, and January 7, 2004, proffering federal court documents in four cases, the Memorandum and Order in *City of Lodi v. M & P Investments* (E.D.Cal. Mar. 31, 2003, No. Civ. S 00-2441 FCD JFM) 2003 U.S. Dist. LEXIS 24879, 308 F.Supp.2d 1137, the Memorandum Opinion in *People v. M&P Investments et al.* (9th Cir. 2003) 83 Fed.Appx. 895, the Reporter's Transcript in *People v. M&P Investments, et al.*, (No. Civ. S-00-2441 FCD) 2003 U.S. Dist. LEXIS 24879, and the Memorandum and Order in *Fireman's Fund Insurance Company v. City of Lodi, California, et al.* (E.D. Cal. 2003) 296 F.Supp.2d 1197. Judicial notice will not be taken of matters not necessary or relevant to a resolution of the appeal. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [76 Cal.Rptr.2d 749, 958 P.2d 1062]; *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1141 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) The requested documents are proffered on the issue of the City's PRP status. Because we do not reach that issue, the documents are unnecessary to resolve this appeal. Randtron also proffers the Memorandum and Order in *Fireman's Fund Insurance Company v. City of Lodi, California, et al., supra,* No. Civ. S 98-1489 FCD JFM, on the issue of federal preemption. Because we do not reach that question, this order is likewise unnecessary to a resolution of this case. For this same reason, we do not reach the issue addressed by the Attorney General in his amicus curiae reply brief in support of Randtron, i.e. whether the City may prosecute this action in the name of the People of the State of California. That issue was proffered on a collateral issue raised by the City in its respondent's brief regarding its PRP status, in which it argued inter alia, that its PRP status is irrelevant because this enforcement action is being prosecuted by "the People of the State of California, an equitably innocent party" and "the City of Lodi is not even a party to these proceedings . . . ." Nevertheless, we considered the Attorney General's brief to the extent it bore on the related question of the City's standing to bring the present action. (See fn. 1, *ante.*)

abatement action order for that property. For that reason, we also hold the administrative and judicial exhaustion doctrines do not bar a challenge to the administrative order.

We do not disagree with the City's assertion that HSAA is a remedial statute that contemplates local action and regulation of environmental contamination. However, with respect to listed sites, the City's argument ignores the statutory language that all response actions for listed sites must be in compliance with HSAA and that DTSC, or the regional board when appropriate,[17] is the sole agency with responsibility for ensuring the response action is carried out consistent with HSAA.

### A. *Standard of Review*

A motion for summary judgment shall be granted when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); see *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].) "We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.*, at p. 476.)

■ A moving party defendant is entitled to judgment as a matter of law when one or more elements of the plaintiff's case cannot be established or there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subds. (a) and (o)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 [107 Cal.Rptr.2d 841, 24 P.3d 493]; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 356 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

The legal question is whether MERLO is preempted under HSAA. It is beyond dispute that beginning in 1993, the Lodi Groundwater Site, encompassing the City, was a listed site within the meaning of section 25356, subdivision (b). (*Fireman's Fund, supra*, 302 F.3d at p. 935.) (See fn. 9, *ante*.) No evidence was offered to establish the site has been delisted.[18] It is also beyond dispute the Randtron property lies within the City and

---

[17] All further references to DTSC will include the regional board where appropriate.

[18] We also take judicial notice of *City of Lodi v. Unigard Insurance Co.* (C039076), a case presently pending before us and raising the same preemption claim. There the City *stipulated* at trial that the Lodi Groundwater Site is a DTSC listed site. Under the doctrine of judicial estoppel, the City is precluded from taking a directly contradictory position in this case on that critical fact. (*International Engine Parts, Inc. v. Feddersen & Co.* (1998) 64 Cal.App.4th 345, 350 [75 Cal.Rptr.2d 178].)

therefore is located within the listed area. Because the essential facts are undisputed, the question before us is solely one of law.

### B. *General Principles of Preemption*

Under the California Constitution, "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal Const., art XI, § 7.) " ' "Local legislation in conflict with general law is void." ' " (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 747 [29 Cal.Rptr.2d 804, 872 P.2d 143].) A conflict exists if the local law " ' "duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication." ' " (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534], quoting *Candid Enterprises, Inc. v. Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885 [218 Cal.Rptr. 303, 705 P.2d 876]; *People ex rel. Deukmejian v. County of Mendocino* (1984) 36 Cal.3d 476, 484 [204 Cal.Rptr. 897, 683 P.2d 1150], overruled on other grounds in *Professional Lawn Care Ass'n v. Milford* (6th Cir. 1990) 909 F.2d 929, 933.)

██ A statute representing the state's regulation of a subject preempts local regulation on the same subject when that subject requires uniform treatment throughout the state. (*Chavez v. Sargent* (1959) 52 Cal.2d 162, 176–177 [339 P.2d 801], overruled on other grounds in *Petri Cleaners, Inc. v. Automotive Employees, etc., Local No. 88* (1960) 53 Cal.2d 455, 473–475 [2 Cal.Rptr. 470, 349 P.2d 76]; *Tolman v. Underhill* (1952) 39 Cal.2d 708, 712 [249 P.2d 280].) Even if the wording of the local law does not conflict with the statute, it is preempted because dual regulation of the same subject would inevitably result in a conflict of jurisdiction. (*Chavez v. Sargent, supra,* 52 Cal.2d at pp. 176–177.)

### C. *HSAA*

We begin with an overview of HSAA, California's "superfund" statute and the state's counterpart to CERCLA. (42 U.S.C. §§ 9601–9675; *Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 865, fn. 4 [77 Cal.Rptr.2d 107, 959 P.2d 265].)

HSAA creates a number of subaccounts in the General Fund that are administered by the director of DTSC. (§§ 25301, 25313, 25330, 25330.4–25330.6, 25334, 35336–36337.) The stated purposes of HSAA are threefold: (1) to provide for response authority for releases of hazardous substances that pose a threat to the public health or environment, (2) to provide compensation for out-of-pocket medical expenses and lost wages or

business income resulting from injuries caused by exposure to hazardous substances, and (3) to make available adequate funding to meet federal requirements that California pay 10 percent of the cleanup costs. (§ 25301.) Only costs incurred for response actions taken under and consistent with CERCLA or HSAA qualify for reimbursement under HSAA. (§ 25350.)

To implement these purposes, HSAA provides a comprehensive and detailed scheme to ensure the timely and cost-effective cleanup of hazardous substance release sites. It establishes authority, procedures, and standards to carry out the investigation, removal and remediation of contaminated sites (§§ 25355, 25356.1.5, 25355.7, 25355.8, 25358.3, subds. (a) and (c), 25363), issue and enforce a removal or remedial action order to any RP (§ 25358.3, subds. (a) and (f)), impose administrative or civil penalties for noncompliance of an order (§§ 25359, 25359.2), recover costs and expenses incurred by the DTSC in carrying out HSAA (§ 25360, subd. (a)), determine by binding arbitration the apportionment of liability of an RP (§§ 25363, 25356.3, 25356.4), seek contribution from other RP's (§ 25359.5) and apply for compensation of loss caused by the release of a hazardous substance. (§§ 25372 to 25381.) Additionally, an RP may seek judicial review of a final remedial action plan pursuant to Code of Civil Procedure section 1085 (§§ 25356.1, subd. (g)(1), 25356.8, subd. (b)) and of the arbitration decision apportioning liability. (§ 25356.8, subd. (a).)

■ The City argues however, that a local municipality retains authority to regulate hazardous waste remediation. We agree that local municipalities have such authority in some circumstances. Under article XI, section 7 of the California Constitution, a municipality's police power to protect the health, safety and comfort of its inhabitants is plenary. As long as that power is exercised within the municipality's territorial limits and does not conflict with state law, it is coextensive with that of the Legislature. (*Candid Enterprises, supra,* 39 Cal.3d at p. 885; *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 140 [130 Cal.Rptr. 465, 550 P.2d 1001]; *Boyd v. City of Sierra Madre* (1919) 41 Cal.App. 520, 523 [183 P. 230].)

■ Consistent with that constitutional grant of power, the Legislature has enacted statutes authorizing a municipality to adopt ordinances declaring what constitutes a public nuisance, providing for the summary abatement of a public nuisance (Gov. Code, §§ 38771 and 38773; Wat. Code, § 13002, subd. (b)) and for relief from contamination and pollution, and regulating the disposal of waste that might degrade water quality. (Wat. Code, § 13002, subds. (a) and (e).) HSAA also contemplates that local municipalities may define an authorized release into the environment (§ 25326) and impose remedial responsibility on an RP for the cleanup of a hazardous materials

release site. (§ 25260, subd. (h).)[19] We have therefore recognized that generally speaking, "there is no tenable claim that the subject of groundwater is outside the purview of municipal legislation." (*Baldwin v. County of Tehama* (1994) 31 Cal.App.4th 166, 173 [36 Cal.Rptr.2d 886].)

### 1. *DTSC-listed Sites*

However, HSAA carves out an exception to a municipality's authority to regulate the remediation of hazardous waste contamination at a release site listed by DTSC pursuant to section 25356. The DTSC is required to select for response action, pursuant to HSAA, sites that pose a substantial threat to public health or safety or to the environment and to assign each such site to one of two priority tiers. (§ 25356, subds. (b)(1) and (c).) A list of the selected sites must be published, revised at least annually, and made available to the public or any interested person. (§ 25356, subd. (b)(1).)[20] Once a site is listed, "all actions carried out in response to hazardous substance releases or threatened releases . . . shall comply with the procedures, standards, and other requirements" set forth in HSAA. (§ 25356, subd. (d).)

The Governor is vested with the responsibility for coordinating all state response actions for listed sites "to assure the maximum use of available federal funds." (§ 25355, subd. (a).) Additionally, DTSC is charged "with *sole* responsibility for ensuring that required action in response to a hazardous substance release or threatened release at a listed site is carried out in compliance with the procedures, standards, and other requirements set forth in *this chapter,* and shall, as appropriate, coordinate the involvement of interested or affected agencies in the response action." (§ 25356, subd. (h), italics added.) To that end, DTSC is required to "prepare or approve remedial action plans for *all* sites listed pursuant to Section 25356" (§ 25356.1, subds. (b), (e), and (h), italics added)[21] and to oversee the implementation of those plans. (§ 25356, subd. (h).)

Notice of the site and of DTSC's intention to conduct a response action for that site, must be given to the public and to persons living in close proximity

---

[19] Section 25260 is in chapter 6.65 of division 20, which is entitled "Unified Agency Review of Hazardous Materials Release Sites." By contrast, HSAA is in chapter 6.8 of division 20, and does not define an RP by reference to local law, but rather by reference to CERCLA. (§ 25323.5, subds. (a)(1) and (b).)

[20] DTSC is required to promulgate regulations establishing criteria for "the selection of hazardous substance release sites for a response action under this chapter [HSAA]." (§ 25356, subd. (a); see Cal. Code Regs., tit. 22, § 67400.1.) It must then list the sites based on those criteria and the extent to which deferral of action is likely to result in a rapid increase in response costs at the site or in a significant increase in risk to human health or safety or the environment. (§ 25356, subd. (b).)

[21] By contrast, when the site is not so listed, the department has *discretion*, upon request by a PRP, to prepare or approve a remedial action plan. (§ 25356.1, subd. (c).)

to the listed site. (§ 25358.7, subd. (b).) DTSC must provide an opportunity for meaningful public participation in response actions for such sites (§ 25358.7, subds. (a) and (b)), and provide any person affected by the response action with an opportunity to participate in the decisionmaking process for that action. (*Id.*, subd. (c).) The statutory scheme also authorizes the establishment of a community advisory group by the affected community to review and comment upon any response action to be conducted. (§ 25358.7.1, subd. (a).)

 The City correctly asserts that under section 25351.2, a city or county is authorized to initiate a removal or remedial action for a listed site and recover its costs for removal or remedial action when a PRP has failed to take the required action. (§ 25351.2, subds. (a) and (c).)[22] From that correct statement of law, the City leaps to the conclusion it may issue an administrative abatement action order for a listed site directing a RP to remediate the site. It may not.

 Section 25351.2 provides that a city may initiate a removal[23] or remedial action[24] for a listed site in accordance with section 25351.2, but may not commence the action until it secures the approval of the director. (§ 25351.2, subds. (a) and (d).) Moreover, a city is precluded from initiating such action if an RP has undertaken a proper and timely remediation action. (§ 25351.2, subd. (a)(1).) If no RP is undertaking such action, a city may do so after giving prior notice to DTSC of its planned action and obtaining the approval of its plan by the director. (§§ 25313, 25351.2, subd. (a)(1) and (2), 25356.1, subd. (b).) Before beginning the cleanup, a city must also provide DTSC with cost estimates of the action and demonstrate it has sufficient

---

[22] A city's recovery of its costs is subject to set-off if the release site is owned or operated by a local agency at the time of the disposal, to the extent the agency would otherwise be liable for the costs of the action. (§ 25353, subd. (a).)

[23] " 'Remove' or 'removal' includes the cleanup or removal of released hazardous substances from the environment or the taking of other actions as may be necessary to prevent, minimize, or mitigate damage which may otherwise result from a release or threatened release, as further defined by Section 101(23) of the federal act (42 U.S.C. Sec. 9601(23))." (§ 25323.)

[24] HSAA defines "remedial action" to include:

"(a) Those actions that are consistent with a permanent remedy, that are taken instead of, or in addition to, removal actions in the event of a release or threatened release of a hazardous substance into the environment, as further defined by Section 101(24) of the federal act (42 U.S.C. Sec. 9601(24)), except that any reference in Section 101(24) of the federal act (42 U.S.C. Sec. 9601(24)) to the President, relating to determinations regarding the relocation of residents, businesses, and community facilities shall, for the purposes of this chapter, be deemed to be a reference to the Governor and any other reference in that section to the President shall, for the purposes of this chapter, be deemed a reference to the Governor, or the director, if designated by the Governor.

"(b) Those actions that are necessary to monitor, assess, and evaluate a release or a threatened release of a hazardous substance.

"(c) Site operation and maintenance." (§ 25322.)

funds to carry out the plan. (§ 25351.2, subd. (a).) If the director approves the proposed action and a final remedial action plan is issued, the city is deemed "to be acting in place of the department for purposes of implementing the remedial action plan *pursuant to . . . chapter* [*6.8*]." (*Id.* subd. (b), italics added.)

█ Thus, the language of HSAA makes clear that the cleanup of listed sites must comply with HSAA and that the sole authority to administer the statewide program for the remediation of hazardous waste contamination at such sites is vested with DTSC. For this reason, the actual remediation of a listed site is not subject to local regulation or action outside the authority of HSAA and without the approval and supervision of DTSC. (§ 25356, subd. (d).) Once DTSC has confirmed that contamination at a particular site poses a significant threat to human health or safety or to the environment and lists the site in its published list of hazardous substance release sites, the problem is designated as one of statewide concern, requiring application of uniform standards, procedures, and remedies subject to the jurisdiction of DTSC.

█ Although HSAA grants a city limited authority to initiate and implement a cleanup action of a listed site, the action plan must be carried out with prior notice to DTSC and approval of the director. (§ 25356, subd. (d).) This limited grant of authority to municipalities for the remediation of listed sites under the watchful eye of DTSC is by implication a denial of the grant of any greater authority to take independent action. HSAA does not authorize a city to issue and enforce an administrative abatement order against an RP for the cleanup of a listed site pursuant to its own ordinance.

### 2. *Construction Clause*

The City contends section 25366, subdivision (c) (hereafter construction clause or subdivision (c)), provides that HSAA does not affect or modify the obligations or liabilities of any person under any other provision of state or federal law, and asserts that municipal ordinances are state laws. The City relies on section 25326 in support of its argument that state law includes municipal ordinances. The City's reliance on section 25326 is misplaced.

The construction clause provides that with specified exceptions relating to the recovery of costs and the apportionment of liability, HSAA does not affect or modify the "obligations or liability of any person under any other provision of state or federal law, including common law . . . ." (§ 25366,

subd. (c).)[25] This provision says nothing about municipal law and HSAA does not provide a generally applicable definition of state law.[26]

■ While section 25326 defines state law to include ordinances,[27] that definition applies only to subdivision (b) of section 25366, which provides that "[n]othing in this chapter shall be construed as authorizing recovery for response costs or damages resulting from any release authorized or permitted pursuant to state law . . . ." Simply stated, the effect of section 25366, subdivision (b) is to exempt from liability what is authorized by ordinance. Subdivision (c) of section 25366, on the other hand, relates to liability and obligations for unauthorized releases. There is nothing in the statutory language to suggest that the broadened definition of state law applicable to subdivision (b) is also applicable to define the meaning of the term state law as used in the subdivision (c).

### 3. *Liability for Public Nuisance*

■ The construction clause does, however, serve to preserve "obligations or liability of any person under any other provision of state . . . law, including common law . . . ." (§ 25366, subd. (c).) We construe this language to preserve the substantive law imposing liability and obligations upon parties responsible for hazardous waste contamination.

---

[25] Section 25366 states as follows:

"(a) This chapter shall not be construed as imposing any new liability associated with acts that occurred on or before January 1, 1982, if the acts were not in violation of existing state or federal laws at the time they occurred.

"(b) Nothing in this chapter shall be construed as authorizing recovery for response costs or damages resulting from any release authorized or permitted pursuant to state law or a federally permitted release.

"(c) Except as provided in Sections 25360, 25361, 25362, and 25363, *nothing in this chapter shall affect or modify in any way the obligations or liability of any person under any other provision of state or federal law, including common law*, for damages, injury, or loss resulting from a release of any hazardous substance or for removal or remedial action or the costs of removal or remedial action of the hazardous substance." (Italics added.)

[26] By contrast, chapter 6.5 of division 20 governing hazardous waste control states that "[n]o provision of this chapter shall limit the authority of any state or local agency in the enforcement or administration of any provision of law which it is specifically permitted or required to enforce and administer." (§ 25105.)

[27] Section 25326 provides: " *'A release authorized or permitted pursuant to state law' means any release into the environment which is authorized by* statute, *ordinance*, regulation, or rule of any state, regional, or local agency or government or by any specific permit, license, or similar authorization from such an agency, including one of the foregoing, that recognizes a standard industry practice, including variances obtained from the agency which allow operations for facilities during a period of time when releases from the facilities do not conform with relevant statutes, ordinances, regulations, or rules. The term includes a federally permitted release, as defined by Section 25325, and releases that are in accordance with any court order or consent decree." (Italics added.)

 The pollution of water constitutes a public nuisance under common law, which has long been codified by state law. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1104 [60 Cal.Rptr.2d 277, 929 P.2d 596]; *Newhall Land & Farming Co. v. Superior Court* (1993) 19 Cal.App.4th 334, 341 [23 Cal.Rptr.2d 377].) Under state law governing public nuisance, a city is authorized to prosecute an RP in a criminal action for maintaining a public nuisance (Civ. Code, §§ 3491, 3492; Pen. Code § 370) or may file a civil action for damages and abatement for the pollution of its groundwater. (Code Civ. Proc., § 731; Civ. Code, §§ 3479–3481, 3491; *People v. Robin* (1943) 56 Cal.App.2d 885, 886 [133 P.2d 436].)[28]

 Nevertheless, these statutory provisions do not authorize the City to enforce, in the name of the People of the State of California, a summary administrative remedial action order to an RP issued pursuant to MERLO. If a city obtains a civil or criminal judgment against an RP for the abatement of a public nuisance of a listed site (Civ. Code, § 3491; Code Civ. Proc., § 731; Gov. Code, § 36900, subd. (a)), the RP must commence remediation in compliance with HSAA (§ 25356, subd. (d)) by obtaining DTSC's approval of a remedial action plan. (§ 25356.1, subd. (b).) That plan must be based upon federal standards pursuant to the National Contingency Plan (40 C.F.R. § 300.400 et seq. (2003)) as well as factors set forth in HSAA. (§ 25356.1, subd. (d).) Once approved, the RP must implement the approved remedial plan under the supervision of DTSC. (See § 25355.7.)

Consistent with our analysis, the joint agreement assigns the City the role of lead agency to commence the prosecution of appropriate enforcement actions against PRP's. It further provides that in the event the City is unable to compel a PRP to commence the work within a specified period of time, the City "shall then promptly undertake in the first instance, at its Sole Cost and in the sole discretion of the DTSC, the 'Interim Work To Be Performed,' " subject to the City's right to seek recovery for its costs from a PRP.[29] The interim work requirement in the agreement imposes upon the City the duty to clean up the site under the circumstances described in section 25351.2.

### 4. *Savings Clause*

The City also contends the uncodified savings clause in the current version of HSAA, together with the joint agreement, demonstrate that the Legislature

---

[28] The city attorney may bring in the name of the People of the State of California, either an action to abate a public nuisance existing within the city limits in a civil suit (Code Civ. Proc., § 731; *People v. Robin, supra*, 56 Cal.App.2d at p. 886) or a criminal action. (Gov. Code, § 36900, subd. (a).)

[29] DTSC may enter into an agreement with a PRP to take corrective action for a listed site. (§ 25355.5, subd. (a)(1).)

contemplated that a city may take action under local law. The City further argues the State of California sanctioned MERLO because the ordinance was adopted pursuant to the joint agreement, which required them to supplement its authority under existing law. We disagree. Neither the savings clause nor the joint agreement alone or in combination operate to sanction MERLO.

■ Regarding the savings clause, the City's brief omits a crucial portion of the clause, giving the misleading impression the reenactment of HSAA does not terminate, affect, or modify any proceeding, order, or agreement issued by a city. To the contrary, the current reenacted version of HSAA applies retroactively to all proceedings, orders and agreements made pursuant to the former version of HSAA.[30]

Nor does the joint agreement sanction or authorize MERLO. The agreement obligates the City to enact and enforce "a comprehensive municipal environmental response ordinance which shall enact into municipal law additional legal authorities to appropriately supplement" the City's existing authority under federal, state and local law. We do not understand this provision to endorse or authorize the abatement provisions of MERLO.

Because the agreement predates MERLO, it cannot be said to endorse MERLO. Moreover, nothing in the quoted language requires the City to enact an ordinance which authorizes the issuance of a summary administrative abatement action order for a listed site. To the contrary, the agreement directs the City to "*prosecute* to resolution comprehensive environmental enforcement actions against the potentially Responsible Parties, utilizing, as appropriate, the full range of its remedial and regulatory *injunctive and cost recovery* authority under federal, state and municipal law . . . ." The language requires the City to file an action in a judicial proceeding against a PRP for injunctive relief and the recovery of costs. As discussed *ante*, if injunctive relief is obtained, the RP must carry out the remedial action in accordance with HSAA.

■ Moreover, DTSC does not have the power to authorize a city to issue an administrative remedial action order. As an administrative agency, DTSC is not empowered to authorize a city to enact an ordinance which

---

[30] Senate Bill No. 47, enacted by Chapter 23 of the Statutes of 1999 of the Regular Session, reenacted HSAA, effective May 26, 1999. Section 3, subdivision (b) of the statute states in pertinent part as follows: "the repeal and reenactment of Chapter 6.8 (commencing with Section 25300) . . . shall not terminate, affect, or modify any proceeding, order, or agreement issued or entered into by any city, county, or city and county, the Department of Toxic Substances Control . . . or any other state or local agency . . . pursuant to those provisions, and notwithstanding the effective date of this act, *the provisions of Chapter 6.8 . . . , as added by Section 2 of this act, shall apply retroactively, on and after January 1, 1999, to those proceedings, orders, [and] agreements. . . .*" (Italics added.)

conflicts with state law. An administrative agency has only that authority conferred upon it by statute and any action not authorized is void. (*Association for Retarded Citizens v. Department of Developmental Services* (1985) 38 Cal.3d 384, 390–392 [211 Cal.Rptr. 758, 696 P.2d 150].) Administrative regulations that exceed the scope of or are inconsistent with the governing statute are unenforceable. (*State Bd. of Education v. Honig* (1993) 13 Cal.App.4th 720, 750–752 [16 Cal.Rptr.2d 727]; *Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 321 [87 Cal.Rptr.2d 423, 981 P.2d 52].) The limitation on an agency's regulatory authority applies equally to its authority to adopt a policy which would not be permitted as a formal regulation. (*Ibid.*) Likewise, DTSC may not enter into an agreement with a city by which it authorizes a city to take action in conflict with HSAA, and HSAA does not authorize DTSC to delegate to a city, its enforcement and oversight duties for the remediation of listed sites.

 We therefore hold that HSAA preempts MERLO when applied to action plans for the removal and remediation of hazardous substances at release sites listed by DTSC under section 25356. As noted, there is no triable issue of fact that the Lodi Groundwater Site is a listed site or that the property formerly owned and operated by Randtron is within the area of that site.

The City does not dispute that the final abatement order was issued pursuant to the provisions of MERLO rather than HSAA. It is true MERLO requires the enforcing officer to comply at a minimum with HSAA for any abatement action undertaken pursuant to MERLO for a listed site. (§ 8.24.030(A)(7).) Nevertheless, as we have shown, HSAA does not authorize a city to issue an administrative abatement action order pursuant to its own ordinance.

MERLO, however, does just that and the summary abatement action order was issued pursuant to MERLO. The enforcing officer's determination that Randtron is liable for creating an environmental nuisance was a summary administrative determination. There is no evidence to suggest the City obtained a judgment against Randtron to abate a public nuisance or that the enforcing officer obtained prior DTSC approval of the abatement action plan. Indeed, contrary to the requirements of HSAA that DTSC approve all remedial action plans for listed sites (§ 25356.1, subd. (b)), the order directs Randtron to prepare a remedial investigation and feasibility study work plan *as approved by the enforcing officer*, to implement that approved work plan, and complete any interim and noninterim abatement. The order is therefore void as a matter of law.

## D. *Exhaustion of Judicial Remedies*

We also reject the City's claim that Randtron cannot challenge its final administrative order because it failed to exhaust its administrative and judicial remedies.

■ The rule governing the exhaustion of administrative remedies holds that "where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942] 9 Witkin, Cal. Procedure (4th ed. 1997) Administrative Proceedings, § 108, p. 1153.)[31] The rule does not apply, however, where as here, the administrative officer lacks subject matter jurisdiction to issue the challenged order. (*County of Alpine v. County of Tuolumne* (1958) 49 Cal.2d 787, 798 [322 P.2d 449]; *Buckley v. California Coastal Com.* (1998) 68 Cal.App.4th 178, 191 [80 Cal.Rptr.2d 562]; 3 Witkin, Cal. Procedure, Actions, § 316, pp. 407–408.) A lack of subject matter jurisdiction is "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." (*Abelleira, supra,* 17 Cal.2d at p. 288.)

As we have concluded, the enforcing officer had no authority to issue an administrative abatement action order directing Randtron to clean up the site. Because the order is void (*City and County of San Francisco v. Padilla* (1972) 23 Cal.App.3d 388, 400 [100 Cal.Rptr. 223]; *Ferdig v. State Personnel Bd.* (1969) 71 Cal.2d 96, 104 [77 Cal.Rptr. 224, 453 P.2d 728]), the doctrine of exhaustion of administrative remedies is inapplicable.

For this same reason, the exhaustion of judicial remedies is also inapplicable. That doctrine holds that failure to obtain judicial review of an administrative agency decision by a timely petition for writ of administrative mandamus renders the administrative order immune from attack under principles of res judicata. (*Knickerbocker v. City of Stockton, supra,* 199 Cal. App. 3d at pp. 241–242.)

■ Collateral estoppel, which is an aspect of res judicata, has been applied to give preclusive effect to an administrative decision if the issue was *actually* litigated in an administrative proceeding by an agency acting in its *judicial capacity.* (*People v. Sims* (1982) 32 Cal.3d 468, 478–479 [186 Cal.Rptr. 77, 651 P.2d 321]; *George Arakelian Farmers, Inc. v. Agricultural*

---

[31] Administrative remedies do not include judicial review by way of a petition for writ of administrative mandamus. (See Code Civ. Proc., § 1094.5; *Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235, 240–241 [244 Cal.Rptr. 764].) Thus, failure to seek judicial review in a mandate proceeding does not bar judicial review in another judicial proceeding. (*Id.* at pp. 241–244.)

*Labor Relations Bd.* (1989) 49 Cal.3d 1279, 1290 [265 Cal.Rptr. 162, 783 P.2d 749]; *Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 794 [72 Cal.Rptr.2d 624, 952 P.2d 641]; *Hollywood Circle, Inc. v. Dept. Alcoholic Beverage Control* (1961) 55 Cal.2d 728, 731–733 [13 Cal.Rptr. 104, 361 P.2d 712]; *Penn-Co. v. Board of Supervisors* (1984) 158 Cal.App.3d 1072, 1077 [205 Cal.Rptr. 298].)[32] However, an administrative order will not be given preclusive effect when the order is made in excess of the agency's jurisdiction. (*Aylward v. Board of Chiropractic Examiners* (1948) 31 Cal.2d 833, 839 [192 P.2d 929]; *San Francisco v. Padilla, supra,* 23 Cal.App.3d at p. 400.) Because the enforcing officer had no jurisdiction to issue the order, the order has no preclusive effect.

Accordingly, we conclude the trial court erred by granting the City's motion for summary judgment and denying Randtron's motion for summary judgment.

## II.

### Recovery of Costs and Attorney's Fees by the City

Randtron contends the trial court erred by awarding costs and attorney's fees to the City. It argues that if we reverse the judgment, reversal of the postjudgment order for costs and attorney's fees is required. It further argues that the attorney fee provision in MERLO upon which the award was based, is preempted by HSAA and is therefore invalid.

In its cross-appeal, the City contends the trial court erred by striking a portion of its costs. However, the City recognizes that we need not reach this claim of error if we reverse the summary judgment, as we do.

After the trial court entered its order granting summary judgment and injunctive relief, the City filed a motion for award of attorney's fees and costs, seeking $1,045,932.16 of which $976,084 was for attorney's fees. The

---

[32] An administrative agency acts in a judicial capacity when it reviews "another agency's decision to determine whether that decision conforms to the law and is supported by substantial evidence." (*Hollywood Circle, supra,* 55 Cal.2d at p. 732; see also *People v. Sims, supra,* 32 Cal.3d at pp. 479–480.) The order here was issued by the enforcing officer in his executive capacity rather than by an tribunal or hearing officer acting in a quasi-judicial capacity.

motion was made pursuant to Government Code section 38773[33] and Code of Civil Procedure sections 1032 and 1033.5. Randtron filed opposition. The trial court granted the request in part, awarding the City $723,877 in attorney's fees and $541 in costs. It otherwise denied the motion.

 Section 1032 of the Code of Civil Procedure authorizes a prevailing party to recover costs in any action or proceeding. (Code Civ. Proc., § 1032, subd. (b).) Allowable costs include attorney's fees when authorized by statute. (*Id.*, § 1033.5, subd. (a)(10)(B).) Because we reverse the judgment, the City is no longer the prevailing party in this action and is therefore not entitled to recover any of its costs.

## III.

### Denial of Undertaking on Appeal

In its cross-appeal, the City contends the trial court abused its discretion when it declined to require Randtron to post an undertaking to stay enforcement of the judgment and injunction pending appeal. It argues that an undertaking is required pursuant to section 917.9, subdivision (a)(2) of the Code of Civil Procedure.[34] Randtron contends the matter is not reviewable on appeal because it is moot. We agree with Randtron.

Generally, "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from . . . including enforcement of the judgment or order . . . ." (Code Civ. Proc., § 916, subd. (a).) The purpose of an automatic stay is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. (*In re Marriage of Varner* (1998) 68 Cal.App.4th 932, 936 [80 Cal.Rptr.2d 628].) " 'The rule prevents the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it.' " (*Ibid.*)

 In certain circumstances, the perfecting of an appeal does not stay enforcement of the judgment or order in the trial court unless an undertaking

---

[33] Government Code section 38773 states: "The legislative body may provide for the summary abatement of any nuisance at the expense of the persons creating, causing, committing, or maintaining it and by ordinance may make the expense of abatement of nuisances a lien against the property on which it is maintained and a personal obligation against the property owner, in accordance with Section 38773.1 or 38773.5."

[34] Section 917.9, subdivision (a)(2) provides in pertinent part: "(a) The perfecting of an appeal shall not stay enforcement of the judgment or order in cases not provided for in Sections 917.1 to 917.8, inclusive, if the trial court, in its discretion, requires an undertaking and the undertaking is not given, in any of the following cases: [¶] . . . [¶] (2) *Appellant is required to perform an act for respondent's benefit* pursuant to judgment or order under appeal." (Italics added.)

is given by the appealing party. (See Code Civ. Proc., §§ 917.1, 917.2–917.9.) Like an automatic stay, the purpose of an undertaking is to protect the judgment while the appeal is *pending*. (*Grant v. Superior Court* (1990) 225 Cal.App.3d 929, 934 [275 Cal.Rptr. 564]; *Lewin v. Anselmo* (1997) 56 Cal.App.4th 694, 700 [65 Cal.Rptr.2d 682].)

■ However, " '[a]n appellate court will not review questions which are moot and which are only of academic importance.' " (*Lester v. Lennane* (2002) 84 Cal.App.4th 536, 566 [101 Cal.Rptr.2d 86], quoting *Keefer v. Keefer* (1939) 31 Cal.App.2d 335, 337 [87 P.2d 856]; *Consol etc. Corp. v. United A. etc. Workers* (1946) 27 Cal.2d 859, 863 [167 P.2d 725].) A question becomes moot when the appellate court is unable to grant any effectual relief or render an opinion that affects the matter at issue. (*Ibid.*) Thus, it has been held that once an appeal is determined and the judgment is reversed, the question of the validity of a stay bond is moot. (*Bekins v. Smith* (1918) 37 Cal.App. 802, 803 [174 P. 942]; see also *Rauer's Law & Collection Co. v. Higgins* (1950) 95 Cal.App.2d 483, 485 [213 P.2d 45].)

Such is the case here. Because consideration of the trial court's ruling on the undertaking would serve no purpose where we reverse the judgment, thereby eliminating both the factual necessity and statutory basis for an undertaking, the issue of the undertaking is moot. Accordingly we will not reach the City's claim of error.

## DISPOSITION

The summary judgment is reversed and the permanent injunction requiring Randtron to comply with the final administrative abatement action order is vacated. The award to the City of its costs and attorney's fees is also reversed. Randtron is entitled to its costs on appeal. (Cal. Rules of Court, rule 27(a)(1).)

Morrison, J., and Robie, J., concurred.