BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
THE HONORABLE CHRISTINE KEHOE, MEMBER OF THE STATE SENATE, has requested an opinion on the following questions:
1. Does the statewide registry and identification card program for medical marijuana users preempt the operation of a city's own registry and identification program?
2. May a city continue to operate its own registry and identification card program for medical marijuana users until the statewide registry and identification card program is implemented in the county in which the city is located?
3. May a county designate a city to perform the functions of the county health department under the statewide registry and identification card program for medical marijuana users?
 CONCLUSIONS
1. The statewide registry and identification card program for medical marijuana users preempts the operation of a city's own registry and identification card program, but a city may adopt and enforce other ordinances consistent with the statewide program.
2. A city may continue to operate its own registry and identification card program for medical marijuana users until the statewide registry and identification card program is implemented in the county in which the city is located, except to the extent that the operation of the city's program would be inconsistent with state law.
3. A county may not designate a city to perform the functions of the county health department under the statewide registry and identification card program for medical marijuana users.
 ANALYSIS
On November 5, 1996, the voters of California adopted Proposition 215, an initiative statute authorizing the medical use of marijuana. (See People v. Mower (2002) 28 Cal.4th 457,463; People v. Bianco (2001) 93 Cal.App.4th 748, 751; People v. Rigo (1999) 69 Cal.App.4th 409, 412.) The measure added section11362.5 to the Health and Safety Code[1] and entitled the statute the "Compassionate Use Act of 1996." (§§ 11362.5, subd. (a).) Section 11362.5 "creates an exception to California laws prohibiting the possession and cultivation of marijuana." (United States v. Oakland Cannabis Buyers' Cooperative (2001)532 U.S. 483, 486.) "These prohibitions no longer apply to a patient or his primary caregiver who possesses or cultivates marijuana for the patient's medical purposes upon the recommendation or approval of a physician." (Ibid.; see People v. Mower, supra, 28 Cal.4th at pp. 471- 474; People v. Galambos (2002)104 Cal.App.4th 1147, 1160 — 1162; People v. Young (2001)92 Cal.App.4th 229, 235.)[2]
The chief purposes of Proposition 215 are: (1) to give Californians the right to obtain and use marijuana in the medical treatment of illnesses for which it provides appropriate relief, as recommended by a physician, (2) to protect patients and primary caregivers, as defined, from criminal prosecution or other sanctions based on their possession, use, or distribution of marijuana for medical purposes, and (3) to encourage implementation of a cooperative governmental plan to make marijuana available and affordable to all patients in medical need thereof. (§ 11362.5, subd. (b)(1); see also § 11362.5, subd. (c) [barring punishment of physicians for recommending marijuana to patients]; 86 Ops.Cal.Atty.Gen. 180, 181 (2003).)
The three questions presented for analysis concern a recently established state program to facilitate implementation of Proposition 215. In 2003, the Legislature enacted sections 11362.7 through 11362.83 to provide a uniform system of "identification of qualified patients and their designated primary caregivers in order to avoid unnecessary arrest and prosecution . . . ." (Stats. 2003, ch. 875, § 1.) Under this legislation, the state Department of Health Services ("Department") is directed to "establish and maintain a voluntary program for the issuance of identification cards" to qualified patients and primary caregivers, and to provide a process through which state and local law enforcement officers may immediately verify a card's validity. (§ 11362.71, subd. (a); see also § 11362.71, subd. (d)(3).) Each county health department, or other "health-related governmental or nongovernmental entity or organization" designated by the county (§ 11362.71, subd. (c)), is to provide applications, receive and process completed applications, and issue identification cards. (§§ 11362.71, subd. (b); 11362.72-11362.74.)[3] Section 11362.77, subdivision (a), sets forth the maximum amount of marijuana and number of marijuana plants that a qualified patient or caregiver may possess without prosecution; however, local governments are expressly authorized to allow greater amounts. Subdivision (c) of section 11362.77 provides: "Counties and cities may retain or enact medical marijuana guidelines allowing qualified patients or primary caregivers to exceed the state limits set forth in subdivision (a)."[4] Section 11362.83 additionally provides: "Nothing in this article shall prevent a city or other local governing body from adopting and enforcing laws consistent with this article."
1. Preemption of Local Programs
The first question to be resolved is whether the statewide registry and identification card program preempts the operation of a city's own registry and identification card program. We conclude that the statewide program preempts the operation of any local programs, but that cities may adopt and enforce other related ordinances if they are consistent with state law.
Under the California Constitution, each city and county is authorized to "make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.) In Candid Enterprises, Inc. v. Grossmont Union High School Dist. (1985) 39 Cal.3d 878, 885, the Supreme Court examined the scope of this constitutional grant of authority:
 "Under the police power granted by the Constitution, counties and cities have plenary authority to govern, subject only to the limitation that they exercise their power within their territorial limits and subordinate to state law. (Cal. Const., art. XI, §§ 7.) Apart from this limitation, the `police power [of a county or city] under this provision . . . is as broad as the police power exercisable by the Legislature itself.' [Citation.]"
In addition, charter cities may adopt and enforce ordinances that conflict with general state laws, if the subject matter is a "municipal affair" and not a "statewide concern." (Cal. Const., art. XI, § 5; see American Financial Services Assn. v. City of Oakland (2005) 34 Cal.4th 1239, 1251; Johnson v. Bradley (1992)4 Cal.4th 389, 399.) Here, as we shall demonstrate, the statewide registry and identification card program is a subject of statewide concern; accordingly, if the operation of the city's program conflicts with state law, the local program is preempted and void. (See American Financial Services Assn. v. City of Oakland, supra, 34 Cal.4th at p. 1251; Morehart v. County of Santa Barbara (1994) 7 Cal.4th 725, 747; Cohen v. Board of Supervisors (1985) 40 Cal.3d 277, 290; Candid Enterprises v. Inc. v. Grossmont Union High School Dist., supra, 39 Cal.3d at p. 885; City of Lodi v. Randtron (2004) 118 Cal.App.4th 337, 351.)
A conflict between a state law and a local ordinance exits where "the ordinance duplicates or is coextensive therewith, is contradictory or inimical thereto, or enters an area either expressly or impliedly fully occupied by general law." (American Financial Services Assn. v. City of Oakland, supra, 34 Cal.4th at p. 1251; see Sherwin-Williams Co. v. City of Los Angeles (1993) 4 Cal.4th 893, 897-898.)
Initially, we note that the Legislature expressly did not intend to "fully occupy" all areas of law concerning the use of medical marijuana when it enacted the statewide registry and identification card program. To the contrary, the 2003 legislation affirmatively authorizes local governments to retain or establish guidelines permitting possession of greater amounts of marijuana (§ 11362.77, subd. (c)) and to adopt and enforce other "laws consistent with this article" (§ 11362.83). Hence, the state statutes at issue here do not expressly or impliedly preempt this entire field of regulation. (See Malish v. City of San Diego (2000) 84 Cal.App.4th 725,728-729 [state law expressly permits local regulation of pawnbrokers and other secondhand dealers].)
On the other hand, the Legislature has demonstrated its intention to fully occupy a narrower, more specific field of regulation with respect to the use of medical marijuana: the establishment of a registry and identification card program designed to "facilitate the prompt identification of qualified patients and their designated primary caregivers . . . ." (Stats. 2003, ch. 875, § 1, subd. (b)(1).) This statewide program includes a mechanism by which law enforcement officers throughout the state "have immediate access to information necessary to verify the validity of an identification card." (§ 11362.71, subd. (b).) The statutory provisions are elaborate, detailed, and comprehensive. (See, e.g., §§ 11362.7 [definitions]; 11362.77 [implementation duties of Department and each county health department]; 11362.715 [information required for applications]; 11362.72 [required steps for processing and issuing applications]; 11362.735 [required contents of identification cards]; 11362.74 [limited reasons for denial of application; appeal; waiting period to reapply]; 11362.745 [annual renewal of card]; 11362.755 [application and renewal fees].) While patients' and caregivers' participation in the program is voluntary (§ 11362.71, subds. (a)(1), (f)), the statutes mandate that all necessary steps be taken by the Department and each county to make the program available to all applicants statewide (§ 11362.71, subds. (a)-(d)).
The statewide program is intended to "[p]romote uniform and consistent application of the act among the counties within the state." (Stats. 2003, ch. 875, § 1, subd. (b)(2).)[5] It follows that a local identification card program will be preempted, and rendered void, once the state program is implemented in the locality. At that point, any local program will "exceed the scope of local regulation permitted by" sections 11362.7 through 11362.83. (Malish v. City of San Diego, supra, 84 Cal.App.4th at p. 729.)[6]
We conclude that the statewide registry and identification card program for medical marijuana users preempts the operation of a city's own registry and identification card program, but a city may adopt and enforce other ordinances consistent with the statewide program.
2. Preemption Prior to Implementation of Statewide Program
The second question we are asked to address is whether a city may continue to operate its own program until the statewide program is implemented. We conclude that a local program may continue to be operated temporarily except for any element that is "contradictory to" state law.
A local ordinance, regulation, or program is contradictory to state law if it is ". . . inimical to state law; i.e., it penalizes conduct that state law expressly authorizes or permits conduct which state law forbids." (Suter v. City of Lafayette, supra, 57 Cal.App.4th at p. 1124; see Sherwin-Williams Co. v. City of Los Angeles, supra, 4 Cal.4th at p. 898; 77 Ops.Cal.Atty.Gen. 147, 148 (1994).) Here, we are asked to consider a city ordinance that (1) provides identification cards for patients and primary caregivers, (2) requires attending physicians to practice within the county where the city is located, (3) prohibits anyone under 18 years of age from receiving a card as a primary caregiver, (4) prohibits cardholders from being detained by city police officers longer than necessary to verify their status, (5) prohibits the seizure of medical marijuana by city police officers, (6) allows possession of marijuana in amounts different from the quantity specified in the statewide program, and (7) prohibits smoking marijuana in any public place. Do any of these elements of the local ordinance permit conduct that is prohibited by state law or forbid conduct that is permitted under state law?
We believe that a city may (1) continue to operate a local registry and identification program, (2) prohibit cardholders from being arrested by city police officers, (3) prohibit the seizure of medical marijuana by city police officers, and (4) allow possession of marijuana in amounts greater than specified in the 2003 legislation. These elements of a local program would be consistent with state law. (See §§ 11362.71, subd. (e); 11362.77, subds. (a), (b), (c), (f); Dublin v. City of Alameda (1993) 14 Cal.App.4th 264, 275-277.)
On the other hand, a city would be preempted from allowing possession of marijuana at levels less than what the state law permits and making identification cards a mandatory prerequisite for prohibiting detention and seizure, because such provisions would directly contradict state law. (See § 11362.77 [qualified patient or caregiver may have at least eight ounces of marijuana per patient; cities and counties may permit quantities that exceed state amounts]; § 11362.71, subd. (f) [identification card not required to claim Act's protections].) Similarly, a city program that defined "attending physician" and "primary caregiver" more narrowly than state law would be preempted to the extent that it prohibited what state law expressly permitted. (Cf. §§ 11362.7, subd. (a) [defining "attending physician"], 11362.7, subd. (e) [permitting "primary caregiver" to be under 18 years of age under specified circumstances].)
Finally, with respect to regulating where persons may use medical marijuana, the Legislature has provided in section 11362.79:
 "Nothing in this article shall authorize a qualified patient or person with an identification card to engage in the smoking of medical marijuana under any of the following circumstances:
"(a) In any place where smoking is prohibited by law.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . "
A city thus would not be preempted from continuing to prohibit marijuana use in any public place; such local limitation may in fact remain after the statewide program has been implemented. (See also § 11362.765, subd. (a); cf. City of San Jose v. Department of Health Services (1998) 66 Cal.App.4th 35, 42
[Legislature has left to local authorities the matter of regulating tobacco smoking in their respective jurisdictions absent a conflict with state law].)
We conclude in answer to the second question that a city may continue to operate its own registry and identification card program for medical marijuana users until the statewide program is implemented in the county in which the city is located, except to the extent that the operation of the city's program would be inconsistent with state law.
3. Designated Health-Related Entity or Organization
The final question to be addressed concerns whether a city may be designated to perform the duties of the county health department under the statewide registry and identification card program for medical marijuana users. We conclude that a city would not be eligible for such designation.
Section 11362.71, subdivision (b), sets forth a number of duties to be performed by a county health department or by the county's "designee" in implementing the statewide registry and identification card program:
 "Every county health department, or the county's designee, shall do all of the following:
 "(1) Provide applications upon request to individuals seeking to join the identification card program.
 "(2) Receive and process completed applications in accordance with Section 11362.72.
"(3) Maintain records of identification card programs.
 "(4) Utilize protocols developed by the department pursuant to paragraph (1) of subdivision (d).
 "(5) Issue identification cards developed by the department to approved applicants and designated primary caregivers."[7]
Section 11362.71, subdivision (c), specifies the entities from which a "county designee," as used in subdivision (b), may be selected:
 "The county board of supervisors may designate another health-related governmental or nongovernmental entity or organization to perform the functions described in subdivision (b), except for an entity or organization that cultivates or distributes marijuana."
The term "health-related . . . entity or organization" is not defined in the 2003 legislation (cf. § 11362.7), nor was the term used in Proposition 215 itself. (See § 11362.5.) A county health department would, of course, be such an entity, as reflected by the Legislature's use of the term "another" in section 11362.71, subdivision (c). Such department operates under the direction of the county health officer, who must be a graduate of a medical school. (§§ 101000, 101105; see Gov. Code, §§ 24000, subd. (s), 33201.) A county health department is responsible for preserving and protecting public health and sanitation, and for responding to public health emergencies. (§§ 101030-101085.) County mental health departments and welfare departments may also be considered health-related governmental entities. (See Gov. Code, § 33201.)
In this case, we think the phrase "health-related . . . entity or organization" is ordinarily understood to mean an organization whose principal focus is on matters involving physical and mental health, including directly providing medical and health services or administering public health programs, disease detection and prevention programs, and therapeutic and educational programs. (See Webster's 3d New Internat. Dict. (2002) at pp. 1043 ["health," "health department"], 1916 ["related"].)[8]
We reject the suggestion that a city may be characterized as a "health-related governmental . . . entity" because it has the authority to enact ordinances and take other measures for the protection and preservation of public health. To be sure, section 101450 does give cities certain health related responsibilities:
 "The governing body of a city shall take measures necessary to preserve and protect the public health, including the regulation of sanitary matters in the city, and including if indicated, the adoption of ordinances, regulations and orders not in conflict with general laws."
A city council may appoint a city health officer to discharge these responsibilities. (See §§ 101460-101470.)
However, unlike a county health department or another organization that specializes in matters of public health, a city is accountable for a broad spectrum of local activities, responsibilities, and programs that are not primarily "of, relating to, or engaged in welfare work directed to the cure and prevention of disease." (Webster's 3d New Internat. Dict., supra, at p. 1043.) Consequently, we do not believe that a city would meet the usual definition of the term "health-related . . . entity or organization."
Moreover, such a designation would result in a city's undertaking countywide responsibilities for implementing the statewide program. In 63 Ops.Cal.Atty.Gen. 8 (1980), we concluded that a city could perform health related responsibilities for a county outside the city's boundaries if authorized by the Legislature. (Id. at p. 10.) Here, we find that the 2003 legislation has not authorized a city to perform these services outside its boundaries. (Cf. People v. Pina (1977) 72 Cal.App.3d Supp. 35, 39-40 [county sheriff has statutory authority to empower city police officers to act as peace officers in any place within the county, including other cities].)[9] In the absence of such a legislative grant of extra-territorial authority, a city's power to act is confined to its own boundaries absent "the urgency of extreme expediency or necessity." (Harden v. Superior Court (1955) 44 Cal.2d 630, 638; see 63 Ops.Cal.Atty.Gen. 539, 547-548 (1980).)
We conclude in answer to the third question that a county may not designate a city to perform the functions of the county health department under the statewide registry and identification card program for medical marijuana users.
[1] All references hereafter to the Health and Safety Code are by section number only.
[2] Possession and distribution of marijuana remain unlawful under the federal Controlled Substances Act (21 U.S.C. § 801 et seq.). (People ex rel. Lungren v. Peron (1997)59 Cal.App.4th 1383, 1387, fn. 2.) Federal law contains no "compassionate use" exemption for medical necessity. (Gonzales v. Raich (2005) ___ U.S. ___, ___; United States v. Oakland Cannabis Buyers' Cooperative, supra, 532 U.S. at p. 486; People v. Mower, supra, 28 Cal.4th at p. 465, fn. 2; People v. Bianco, supra, 93 Cal.App.4th at p. 753.)
[3] The Department is responsible for designing the applications and identification cards, developing protocols to process the applications, confirming the accuracy of the information submitted, and protecting the confidentiality of program records. (§ 11362.71, subd. (d).)
[4] Even in the absence of more lenient local rules, patients and caregivers are not limited to the quantities of marijuana set forth in section 11362.77, subdivision (a); rather, they are entitled to possess and to use medical marijuana in any amounts consistent with the patients' needs, as reflected in doctors' recommendations. (§ 11362.77, subd. (b).) The amounts set forth in section 11362.77, subdivision (a), thus represent "threshold" quantities of marijuana — that is, the amounts up to which the protections of sections 11362.5, 11362.71, subdivision (e), and 11362.765 will automatically apply for every qualified user and possessor throughout the state. Whether greater amounts may be possessed and used depends on local rules and physicians' assessments of particular patients' needs.
[5] As previously mentioned, charter cities may supersede state statutes "with respect to municipal affairs" involving "areas which are of intramural concern only." (California Fed. Savings 
Loan Assn. v. City of Los Angeles (1991) 54 Cal.3d 1, 17; accord, Johnson v. Bradley, supra, 4 Cal.4th at p. 399; see 85 Ops.Cal.Atty.Gen. 210, 213-214 (2002).) This constitutional grant of authority for charter cities has no application here, however, because the establishment and protection of a right to possess and use medical marijuana notwithstanding state criminal statutes is plainly a matter of statewide concern. Further, it is self evident that the procedures and protections afforded by the 2003 legislation are reasonably related to the resolution of this statewide concern. Hence, these state laws would prevail over any conflicting regulatory acts of a charter city. (See, e.g., Johnson v. Bradley, supra, 4 Cal.4th at p. 404; Committee of Seven Thousand v. Superior Court (1988) 45 Cal.3d, 491, 507; 83 Ops.Cal.Atty.Gen. 24, 26-29 (2000); 82 Ops.Cal.Atty.Gen. 165, 167-170 (1999).)
[6] A local identification program would also be in conflict with the statewide program by being "duplicative." (See Sherwin-Williams Co. v. City of Los Angeles, supra, 4 Cal.4th at p. 897.)
[7] Sections 11362.72 and 11362.74 describe steps to be followed by "a county health department or the county's designee" in processing applications and issuing cards.
[8] In attempting to resolve uncertainty or ambiguity in a statute, we may look to the ordinary, commonly understood meanings of the words and phrases used by the Legislature. (See Hunt v. Superior Court (1999) 21 Cal.4th 984, 1000; DaFonte v. Up-Right, Inc. (1992) 2 Cal.4th 593, 601.)
[9] Significantly, no mention of cities is made in section 11362.71. If the Legislature had intended for cities to have a role in performing these particular duties under the statewide program, it knew how to authorize expressly that outcome (see, e.g., §§ 11362.7, 11362.77, 11362.83); however, it chose not to do so.