Filed 12/19/14; unmodified opn. attached

**<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>**


# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

**(Amador)**

**----**


| | |
|---|---|
| MARILYN VAN HORN, | C073173 |
| Plaintiff and Appellant, | (Super. Ct. No. 11-CV-7493) |
| v. | ORDER DENYING THE DEPARTMENT'S PETITION FOR REHEARING AND MODIFYING OPINION |
| DEPARTMENT OF TOXIC SUBSTANCES CONTROL, | |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |


THE COURT:


Defendant and Respondent Department of Toxic Substances Control (the Department) has filed a petition for rehearing with this court. It is ordered that the published opinion filed herein on November 26, 2014, be modified as follows:


1

1.      At page 2, in the last full sentence in the paragraph before the Background, delete the first word "That" and replace it with "Plaintiff alleges this" so the sentence now reads:

> Plaintiff alleges this lien procedure fails to allow an affected landowner to dispute the amount of the lien, the extent of the property burdened by the lien, and the characterization of the landowners as a responsible party.

2.      At page 7, in the first sentence of the second to last full paragraph, which begins, "It can be readily inferred from the complaint", change the word "complaint" to "complaint's allegations" so the sentence now reads:

> It can be readily inferred from the complaint's allegations that the Department did not provide a hearing concerning the propriety of either the lien amount or the specific properties covered by the lien.

3.      At page 9, under the heading "II. The Dispositive Issue and Analysis", delete the entire first paragraph that begins "In light of our review of the HSAA lien law" and replace it with the following two paragraphs:

> It is axiomatic that we cannot determine whether plaintiff has sufficiently alleged a cause of action for lack of due process without knowing what process is due. Consequently, in the context here of a demurrer sustained for uncertainty, the question whether plaintiff has sufficiently alleged a cause of action for lack of due process, involves (1) whether plaintiff has alleged facts with the requisite certainty, and (2) what process is legally due.

> As for the issue of alleging facts with the requisite certainty, in light of our review of the HSAA lien law and plaintiff's petition/complaint, we can now posit that *if* the procedure—alleged by plaintiff as constituting the Department's Lien Procedure here—does not satisfy due process, *then* plaintiff has sufficiently alleged a cause of action with the requisite certainty in her writ of mandate cause of action entitled Imposing Lien Without Due Process

of Law. This is because plaintiff, in that cause of action, has alleged (with relevant facts drawn from exhibits attached to the complaint):

4. At page 10, delete the third full paragraph that begins "Accordingly, the dispositive issue in this appeal becomes:" and replace it with the following:

> With plaintiff's factual allegations specified with the requisite certainty, the issue of what process is legally due becomes the dispositive issue in this appeal. That issue posits: Does the Department's alleged Lien Procedure—by providing a hearing limited only to the issues specified in the Lien Procedure as considered by the Department's Neutral Official (and without additional hearing)—actually satisfy due process (assuming plaintiff proves these factual allegations)? We answer this question, "No."

5. At page 11, the second sentence of the first full paragraph under part II.B. of the Discussion, which begins "The Lien Procedure hearing", insert the words ", as alleged," after this phrase so the sentence now reads:

> The Lien Procedure hearing, as alleged, does not encompass, or encompasses only in a perfunctory way, the following issues:

6. At page 13, second full paragraph, second sentence, with a parenthetical that reads "(albeit, apparently in a pro forma process only)", delete the word "apparently" and replace it with the word "allegedly" so the parenthetical now reads: "(albeit, allegedly in a pro forma process only)."

7. At page 13, first sentence of the third full paragraph, insert the word "allegedly" before the word "conducted" so the line reads "allegedly conducted by its designated neutral official (without additional hearing), violates due".

3

8.     At the top of page 14, delete the first full sentence that begins "In its current form" and replace it with the following, maintaining original footnote 4:

> The Department's Lien Procedure hearing, as alleged, resembles the following observation from a contemporary satirist, "Due process just means that there is a process that you do."**4**

9.     At page 14, first full paragraph, delete the second sentence that begins "Given the technical complexity of the hazardous substance cleanup process" and replace it with the following:

> Given the technical complexity of the hazardous substance cleanup process and the informal nature of the Lien Procedure administrative hearing, the Department—should plaintiff prove her complaint allegations that the Lien Procedure hearing fails to allow a meaningful challenge to the amount or the extent of the lien—must establish it has "a reasonable basis to believe" that (1) the lien amount imposed or increased was proper, and (2) the real property was "subject to, or affected by, the removal and remedial action."

---

**4** See segment entitled *The Word—Due or Die*, The Colbert Report (Mar. 6, 2012) available at <http://thecolbertreport.cc.com/videos/nzr8wl/the-word---due-or-die> [as of Nov. 26, 2014].

10. At pages 14 and 15, delete the entire Disposition and replace it with the following, maintaining original footnote 6:

> The judgment of dismissal is reversed as to plaintiff's writ of mandate cause of action and affirmed as to her declaratory relief cause of action. Plaintiff is awarded her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2), (3), (5).)[6]

Respondent Department's petition for rehearing is denied. There is no change in judgment.

BY THE COURT:

_____HULL_____, Acting P. J.

_____BUTZ_____, J.

_____MURRAY_____, J.

---

[6] We grant the Department's request for judicial notice as to items 1 and 2, which the trial court judicially noticed as well. We deny the request as to items 3 through 8, given that this case has been resolved on the pleadings pursuant to demurrer review.

Filed 11/26/14; unmodified version

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

**(Amador)**

**----**

| | |
|---|---|
| MARILYN VAN HORN, | C073173 |
| Plaintiff and Appellant, | (Super. Ct. No. 11-CV-7493) |
| v. | |
| DEPARTMENT OF TOXIC SUBSTANCES CONTROL, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Amador County, Susan B. Harlan, Judge.  Reversed in part and affirmed in part.

Law Offices of Kenneth M. Foley and Kenneth M. Foley for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Susan S. Fiering, Jamie B. Jefferson and Laura J. Zuckerman, Deputy Attorneys General, for Defendant and Respondent.

In this appeal from a demurrer sustained without leave to amend on the ground of uncertainty, we reverse in part.  We conclude that plaintiff Marilyn Van Horn has stated a cause of action, by alleging that the procedure used by defendant Department of Toxic

1

Substances Control (the Department)—for placing a lien on real property for hazardous substance alleviation pursuant to California's "Superfund" statute (Health & Saf. Code, §§ 25300 et seq., 25365.6)—violates due process. That lien procedure fails to allow an affected landowner to dispute the amount of the lien, the extent of the property burdened by the lien, and the characterization of the landowner as a responsible party.

## BACKGROUND

### *Overview of Hazardous Substance Lien Law Underlying This Litigation*

We begin with an overview of the hazardous substance lien law underlying this litigation.

The Carpenter-Presley-Tanner Hazardous Substance Account Act (Health & Saf. Code, § 25300 et seq.; hereafter, the HSAA) is California's Superfund statute, a counterpart to the federal Superfund statute, the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. § 9601 et seq., known by its acronym CERCLA).[1] (*City of Lodi v. Randtron* (2004) 118 Cal.App.4th 337, 351-352 (*City of Lodi*).) The HSAA sets forth a comprehensive regulatory scheme and authorizes the Department, among other things, to investigate, remove and/or remediate hazardous substances at contaminated sites. (*City of Lodi*, at p. 352.)

Section 25365.6 addresses real property liens under the HSAA. It provides as pertinent:

"(a) Any costs or damages incurred by the [D]epartment or regional board pursuant to this chapter [(i.e., pursuant to the HSAA)] constitutes a claim and lien upon the real property owned by the responsible party that is subject to, or affected by, the removal and remedial action. . . . *A lien established by this section shall be subject to the*

---

[1] Undesignated statutory references are to the Health and Safety Code.

2

*notice and hearing procedures required by due process of the law* and shall arise at the time costs are first incurred by the [D]epartment or regional board with respect to a response action at the site. [¶] . . . [¶]

"(c) The lien provided by this section shall continue until the liability for these costs or damages, or a judgment against the responsible party, is satisfied. However, if it is determined by the court that the judgment against the responsible party will not be satisfied, the [D]epartment may exercise its rights under the lien.

"(d) The lien imposed by this section shall have the force and effect of, and the priority of, a judgment lien upon its recordation in the county in which the property subject to the lien is located. . . ." (Italics added.)

The Department has established a "Lien Placement Policy and Procedure" (hereafter, the Lien Procedure or the Department's Lien Procedure) for placing a lien pursuant to section 25365.6.

The Lien Procedure sets forth neutral official meeting procedures, stating as relevant, "The sole issue at the [lien hearing, termed a 'meeting,'] is whether [the Department] has a reasonable basis to believe that the statutory elements for placing a lien are satisfied. The meeting will not be concerned with issues unrelated to the proposed lien placement, such as, remedy selection, financial hardship, or allocation of responsibility. [¶] The neutral official will make a decision, based on the information on file and any new information presented at the meeting, whether [the Department] has a reasonable basis to place a lien on the property." (Lien Procedure, appen. C, § 3, pars. 3, 4, pp. C-2 through C-3, paragraph numbering omitted.)

The Lien Procedure further specifies, "The neutral official should consider all facts relating to whether [the Department] has a reasonable basis to believe that the

3

statutory elements have been satisfied for the placement of a lien. In particular, the neutral official should consider five elements, whether:

"[1.] The property owner was sent notice of liability by mail.

"[2.] The property is owned by a person who is liable to [the Department] for costs related to the property.

"[3.] The property was subject to or affected by a removal or remedial action.

"[4.] [The Department] has incurred costs with respect to a[n] action under [the HSAA] or CERCLA.

"[5.] The record contains any other information which [is] sufficient to show that the lien notice should not be filed.

"The property owner may present information or submit documents to establish that [the Department] should not place the lien as proposed. . . ." (Lien Procedure, appen. C, § 2, 2d par., p. C-2, paragraph numbering added; hereafter, the five identified elements.)

Against the backdrop of this overview, we turn to the allegations in plaintiff's petition/complaint.

*The Petition/Complaint*

In reviewing a demurrer-based judgment of dismissal, we assume the truth of all facts properly pleaded by the plaintiff, and those that may be inferred therefrom, as well as relevant facts appearing in exhibits attached to the complaint; we may also consider matters subject to judicial notice. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6; *Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, 633, fn. 3; *Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627.)

The operative pleading here, entitled "Second Amended Petition for Writ of Mandate to Review Action Imposing Lien Without Due Process of Law," alleges as follows.

Plaintiff/Petitioner owns a 64-acre site in Jackson, California (comprised of five assessor parcel numbers), which includes an 11-acre portion of (historical) arsenopyrite mine tailings, known as "Tim's Corner" (the property is also known as the Argonaut Mine Tailings Site).

In 1998, the Department, after testing, constructed a fence around plaintiff's property and posted a lien for $245,306.64. (In her briefing on appeal, plaintiff reiterates she is not contesting this lien.)

In November 2007, the Department made an imminent or substantial endangerment determination concerning the property. Plaintiff requested an evidentiary hearing to contest this determination; no hearing was provided, but the Department sent plaintiff a letter explaining the basis of this determination.

Without notice to plaintiff, the Department secured two property inspection warrants, one in 2008 and another in 2010.

In early February 2011, the Department advised plaintiff that it intended to update and increase its lien from $245,306.64 to $833,368.19 (hereafter, for simplicity, the $245,000 lien, the $833,000 lien, and the $588,000 lien increase). The Department also advised plaintiff, for the first time, of a right to a hearing concerning the placement of the lien on her property.

On February 17, 2011, plaintiff, in a letter to the Department (attached as an exhibit to her petition/complaint) requested a hearing on the following four issues: "**1.** The propriety of the [$588,000] lien increase; **2.** The amount of the [$588,000] lien increase; **3.** The properties to be covered by the proposed lien; and **4.** Information

5

obtained by [the Department] justifying the work performed." (Boldface added; hereafter, sometimes referred to as plaintiff's February 17, 2011 hearing request.)

On March 1, 2011, the Department's designated neutral official to hear disputes over placement of liens (a performance manager in the Department) wrote an e-mail to plaintiff's counsel (attached as an exhibit to the petition/complaint), explaining, "I request that you read [the Department's Lien Procedure] to determine if the Neutral Official lien hearing is appropriate for the issues you want addressed. . . . The main focus of the hearing is to determine if [the Department] has met the statutory elements for placement of lien[,] which include[,] but [are] not limited to[,] [the five identified elements]" (as noted in the preceding HSAA *Overview* of the Background of this opinion—i.e., notice; property ownership; property subject to HSAA action; Department costs; any other information).

In this e-mail the neutral official added, "Items **1**, **2** and **4** of your letter leave[] me with an impression that you are concerned about the amount of the lien and w[h]ether the work performed by [the Department] justifies the increased amount. Please note that [the Department] has a separate process for cost disputes and the lien hearing is not the proper forum to determine if [the Department's] charges are appropriate or not. If you are disputing the amount of [the Department's] charges, please contact Mr. Amador [(a supervisor in the Department)] and he should be able to help you in that regard." (Boldface added.)

The neutral official's decision concerning the lien, dated May 13, 2011 (attached as an exhibit to the petition/complaint), stated as pertinent, "As specified in [the Department's Lien Procedure] and explained at the hearing, the sole issue under consideration was whether [the Department] ha[d] a reasonable basis to believe that the [section 25365.6] statutory elements for [the Department] [to] plac[e] the lien were satisfied. . . . [¶] Information in the project file and presented by [the Department] at the

6

hearing, establishes the [following] bas[e]s for [the Department] to place a lien against the subject property[, which bases cover the five identified elements, but not in their particular order, as follows]:  [¶]  1) [The Department] performed response actions, including oversight activities for remediation of the Argonaut property pursuant to Imminent or Substantial Endangerment Determination . . . at the site;  [¶]  2) [the Department] incurred costs by performing response actions, including oversight of remediation activities, at the site;  [¶]  3) [plaintiff] is the owner of record for the property and as such is the responsible party liable for the oversight costs; . . .  [¶]  4) [plaintiff] was provided with adequate notice of [the Department's] intent to place a lien[; and]  [¶]  5)] [t]he property owner has not presented any information or documentation to establish any issue of fact or law to show that [the Department] has not met the statutory criteria to file a lien.  Although [plaintiff] raised several issues related to the lien, the Neutral Official finds that those issues are outside the scope of the Neutral Official hearing.  [¶] . . . [¶]  . . .  Regarding issues raised about due process, ability to pay, billing amount etc., the property owner should work with [the Department] program staff and utilize the existing processes that are in place at [the Department]."

It can be readily inferred from the complaint that the Department did not provide a hearing concerning the propriety of either the lien amount or the specific properties covered by the lien.

Plaintiff "pray[ed] for judgment" that the trial court issue a writ of mandate requiring the Department (a) to remove "the Lien recorded June 26, 2011" (i.e., the $833,000 lien, but plaintiff challenges only the $588,000 lien increase, and does not

7

challenge the $245,000 original lien), and (b) to hold a hearing essentially on the four issues in plaintiff's February 17, 2011 hearing request.[2]

### The Trial Court's Demurrer Ruling

In sustaining the demurrer without leave to amend, the trial court explained, "There are two requirements for bringing a mandamus action: (1) there must be a clear and present ministerial duty to act and (2) there must be a clear, present and beneficial right in the petitioner to the performance of that duty. [Citation.] [¶] . . . The Court notes the current action, seeking a writ of mandate, does not appear to be the appropriate venue in which to address [plaintiff's] concerns, as [plaintiff] received the hearing to which she was entitled."

## DISCUSSION

### I. Standard of Review

A defendant may demur to a complaint, as the Department did here, on the ground that the "pleading is uncertain." (Code Civ. Proc., § 430.10, subd. (f).) The term "uncertain" includes "ambiguous" and "unintelligible." (*Ibid.*)

An appellate court will reverse a trial court's judgment sustaining a defendant's demurrer without leave to amend if the facts alleged in the complaint show entitlement to relief under any possible legal theory, or if there is a reasonable possibility the pleading can be cured by amendment. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Platt v. Coldwell Banker Residential Real Estate Services* (1990) 217 Cal.App.3d 1439, 1444.)

---

[2] Plaintiff alleged a second cause of action for declaratory relief that asks *the trial court* to determine these four issues. The due process at issue in this case involves the process due at the administrative, rather than the judicial, level. Consequently, this declaratory relief cause of action is inappropriate, and we affirm the trial court's grant of demurrer without leave to amend on the ground of uncertainty concerning this particular cause of action.

8

## II.  The Dispositive Issue and Analysis

In light of our review of the HSAA lien law and plaintiff's petition/complaint, we can now posit that *if* the procedure set forth in the Department's Lien Procedure does not satisfy due process, *then* plaintiff has sufficiently alleged a cause of action with the requisite certainty in her writ of mandate cause of action entitled Imposing Lien Without Due Process of Law.  This is because plaintiff, in that cause of action, has alleged (with relevant facts drawn from exhibits attached to the complaint):

(a) that she requested a hearing "concerning the proposed [$588,000] lien increase" to consider the following four issues:  "**1**. The propriety of the lien increase;  **2**. [t]he amount of the lien increase;  **3**. [t]he properties to be covered by the proposed lien; and **4**.  [i]nformation obtained by [the Department] justifying the work performed" (boldface added);

(b) that the Lien Procedure states, "The sole issue at the [lien hearing] is whether [the Department] has a reasonable basis to believe that the statutory elements for placing a lien are satisfied.  The [hearing] will not be concerned with issues unrelated to the proposed lien placement, such as, remedy selection, financial hardship, or allocation of responsibility.  [¶]  . . .  The neutral official will make a decision . . . whether [the Department] has a reasonable basis to place a lien on the property";

(c) that the neutral official designated by the Department to hear the matter, parroting verbatim the Department's Lien Procedure, responded to plaintiff's hearing request, stating that items **1**, **2** and **4** would not be heard under the Lien Procedure and adding, "I request that you read [the Lien Procedure] to determine if the Neutral Official lien hearing is appropriate for the issues you want addressed. . . .  The main focus of the hearing is to determine if [the Department] has met the statutory elements for placement of lien[,] which include[,] but [are] not limited to[,] [the five identified elements]" (as specified in the HSAA *Overview* of the Background of this opinion, *ante*, at pp. 3-4);

9

(d) that the neutral official's sole determination at the Lien Procedure hearing was that the Department had a reasonable basis to place a lien, after considering the five identified elements in pro forma fashion as stated explicitly in the neutral official's May 13, 2011 decision (i.e., the Department performed HSAA response actions; the Department incurred costs; plaintiff was adequately notified; plaintiff is the owner of record for the property "and as such is the responsible party liable for the [HSAA] costs"; and no other relevant information was presented); and

(e) that she "pray[ed] for judgment" that the trial court issue a writ of mandate requiring removal "of the Lien recorded June 26, 2011 [(i.e., the $588,000 lien increase)]" and remanding the matter for a lien hearing to determine essentially the four issues in her hearing request (see (a) above).

Accordingly, the dispositive issue in this appeal becomes: Does the Department's Lien Procedure—a procedure that plaintiff has alleged with the requisite certainty in her complaint violates due process—actually satisfy due process (as the HSAA's lien statute, section 25365.6, requires) by providing a hearing limited only to the issues specified in the Lien Procedure as considered by the Department's neutral official (and without additional hearing)? We answer this question, "No."

The Department, in its briefing, has cited the seminal decision on due process hearing requirements, *Mathews v. Eldridge* (1976) 424 U.S. 319 [47 L.Ed.2d 18].

*Mathews* set forth the "now familiar threefold inquiry" to determine what process is constitutionally due when the government seeks to effect a deprivation. (*Connecticut v. Doehr* (1991) 501 U.S. 1, 10 [115 L.Ed.2d 1, 13].) That inquiry requires a court to balance (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the

10

additional or substitute procedural requirement would entail. (*Mathews v. Eldridge*, *supra*, 424 U.S. at p. 335 [47 L.Ed.2d at p. 33]; *Reardon v. United States* (1st Cir. 1991) 947 F.2d 1509, 1518 (*Reardon*).) We apply the *Mathews* test to the facts alleged here.

### A. *The Private Interest Affected by Official Action*

A real property lien imposed under the HSAA—which clouds title, impairs the ability to alienate the property, taints credit ratings, and reduces the chance of subsequently financing the property—significantly affects a private property interest. (*Reardon, supra,* 947 F.2d at pp. 1518-1519.) In *Reardon*, the First Circuit Court of Appeals concluded that the lien provisions of the federal Superfund statute, CERCLA, "by not providing, at the very least, notice and a pre-deprivation hearing to a property owner who claims that the property to be encumbered is not 'subject to or affected by a removal or remedial action,' violate the fifth amendment due process clause." (*Reardon*, at pp. 1523-1524; see 42 U.S.C. § 9607(l); see also 1 Robie et al., Cal. Civil Practice—Environmental Litigation (2d ed. 2002) § 3:94, Overview, pp. 115-116 (Robie) [noting that the CERCLA lien provision (42 U.S.C.§ 9607(l)) is similar to the HSAA lien provision (§ 25365.6, subd. (a))].)

Furthermore, the HSAA lien has the force, effect, and priority of a judgment lien, upon its recordation in the pertinent county, and the lien continues until the liability for HSAA costs and damages, or a judgment against the responsible party, is satisfied. (§ 25365.6, subds. (d), (c).)

Consequently, the private property interest affected is significant.

### B. *The Risk of an Erroneous Deprivation of Such Interest Through the Procedures Used*

Under the facts alleged in plaintiff's petition/complaint, the Lien Procedure hearing is a limited, pro forma one that focuses on the lien's *placement* and little on the lien's *propriety*. The Lien Procedure hearing does not encompass, or encompasses only in a perfunctory way, the following issues:

11

(1) the amount of the lien (which would include the necessity of the work underlying the lien—we note that this issue comprises one inherent in a lien dispute);

(2) the real property "subject to, or affected by, the [HSAA] removal and remedial action" (we note that this quoted phrase is in § 25365.6, subd. (a) and this issue may be a " 'highly factual' " one if the determination is whether certain of the owner's parcels of land, as plaintiff alleges here, are not "subject to, or affected by" the Department's response action—the "overbroad lien" issue); and

(3) whether the "responsible party" is actually responsible or an innocent landowner (we note that this quoted designation is also in § 25365.6 and this issue again may be a fact-intensive one in the context of an innocent landowner defense, a defense available under the HSAA and one which may involve questions of due care, foreseeability, and objective and subjective knowledge [see § 25323.5, subd. (b) of the HSAA, which incorporates the federal CERCLA's "innocent landowner" defense set forth in 42 U.S.C. §§ 9607(b) & 9601(35) (the innocent landowner issue)]). (See *Reardon*, *supra*, 947 F.2d at p. 1519.)[3]

Under the Department's Lien Procedure hearing alleged here, the risk is high of an erroneous deprivation of the significant private interest through the current procedures used; and the value of additional safeguards is high as well, along the three lines just specified.

### C. *The Government's Interest*

The state's principal interest under the HSAA is to timely and efficiently clean up hazardous substance releases that pose a threat to the public health or the environment.

---

[3] In her petition/complaint, plaintiff disputes the amount of the $588,000 lien increase and she raises the overbroad lien issue. She does not raise the innocent landowner issue.

12

(§ 25301 [legislative intent of the HSAA]; *City of Lodi*, *supra*, 118 Cal.App.4th at pp. 351-352.)  This interest is of vital importance.

A lien imposed under section 25365.6 is simply a tool to help pay the costs and damages the state incurs in doing this cleanup.  Accordingly, the hearing envisioned here for imposing or increasing a lien is not meant to delay the cleanup process, or impede investigative, removal or remedial activities (including determinations of imminent or substantial endangerment, or work of an emergency nature).  The HSAA cleanup process and these response activities may proceed on one time-track; the HSAA lien hearing process may proceed on another.

Providing the affected landowner, at some point, with a meaningful opportunity to dispute the amount of the lien or the lien increase, the extent of the property burdened by the lien or the lien increase (i.e., the overbroad lien issue), and the characterization of the landowner as a responsible party (i.e., the innocent landowner defense), does not seem unduly burdensome in fiscal or administrative terms.  These issues are matters inherent in a lien dispute, or are already contemplated in section 25365.6, or are already provided as part of the Lien Procedure hearing process (albeit, apparently in a pro forma process only).  (See *Reardon*, *supra*, 947 F.2d at p. 1522 [providing a hearing to a property owner claiming the lien was wrongfully imposed would seem to be a relatively simple matter].)

Applying *Mathews*'s three-part balancing test to determine the process constitutionally due, then, we conclude that the Department's Lien Procedure hearing, as conducted by its designated neutral official (without additional hearing), violates due process by failing to allow the affected landowner to dispute the amount of the lien or the lien increase, the extent of the property burdened by the lien or the lien increase, and the characterization of the landowner as a responsible party rather than an innocent landowner.  (See 1 Robie, *supra*, § 3:94, Overview, pp. 115-116 ["The constitutionality of this provision [(i.e., the § 25365.6 lien provision)] is questionable . . . since a similar

13

lien provision in CERCLA (42 U.S.C. § 9607(l)) has been held to be unconstitutional," citing *Reardon, supra,* 947 F.2d 1509].)  In its current form, the Department's Lien Procedure hearing, as just characterized, resembles the following observation from a contemporary satirist, "Due process just means that there is a process that you do."**4**  A satirist can indulge such bemusement; a court cannot.

As *Reardon* recognizes, though, "the Constitution certainly allows the process due to be tailored to fit the realities of the situation."  (*Reardon*, *supra*, 947 F.2d at p. 1522.)  Given the technical complexity of the hazardous substance cleanup process and the informal nature of the Lien Procedure administrative hearing, the Department, to prevail under the additional Lien Procedure hearing requirements imposed here, must establish it has "a reasonable basis to believe" that (1) the lien amount imposed or increased was proper, and (2) the real property was "subject to, or affected by, the removal and remedial action."  The landowner bears the burden of establishing an "innocent landowner" defense.  (*Reardon*, at p. 1522.; see Lien Procedure, appen. C, § 2, 1st par., p. C-1, & § 3, par. 3, p. C-2; 42 U.S.C. § 9607(b)(3).)**5**

Accordingly, we conclude that plaintiff has stated a cause of action for lien imposition without due process of law, involving the amount of the $588,000 lien increase and the properties to be covered by the lien.  (See fn. 3, *ante.*)

### DISPOSITION

The judgment of dismissal is reversed as to plaintiff's writ of mandate cause of action and affirmed as to her declaratory relief cause of action.  We direct the trial court

---

**4**  See segment entitled *The Word—Due or Die*, The Colbert Report (Mar. 6, 2012) available at <http://thecolbertreport.cc.com/videos/nzr8wl/the-word---due-or-die> [as of Nov. 26, 2014].

**5**  Plaintiff has not challenged the informal rules of procedure comprising the Department's Lien Procedure hearing.

to issue a writ of mandate requiring the Department (a) to remove its lien recorded June 26, 2011, and (b) to hold a Lien Procedure hearing at which plaintiff will be allowed to challenge, pursuant to the reasonable basis procedure specified in the penultimate paragraph above, (1) the amount of the $588,000 lien increase (including the necessity of the work comprising that increase) and (2) the properties to be covered by the lien (including which of plaintiff's parcels are so covered).  (See pt. II.B., *ante*, at pp. 11-12.)  Should the Department simply remove the $588,000 lien increase, these directions to the trial court will be unnecessary, and plaintiff's property will be burdened with only the $245,000 uncontested lien.  (See pp. 4-5, *ante*.)  Plaintiff is awarded her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2), (3), (5).)[6]  (***CERTIFIED FOR PUBLICATION***)


                                                    BUTZ              , J.


We concur:


      HULL             , Acting P. J.


      MURRAY         , J.

---

[6]  We grant the Department's request for judicial notice as to items 1 and 2, which the trial court judicially noticed as well.  We deny the request as to items 3 through 8, given that this case has been resolved on the pleadings pursuant to demurrer review.