Filed 9/25/24  Gogadze v. DTSC CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| TAMAZI GOGADZE, | B333689 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22BBCV00172) |
| v. | |
| STATE OF CALIFORNIA DEPT. OF TOXIC SUBSTANCES CONTROL et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Margaret L. Oldendorf, Anthony J. Mohr, and Frank M. Tavelman, Judges.  Affirmed.

Decker Law, James Decker and Chris Jones for Plaintiff and Appellant.

Rob Bonta, Attorney General, Jodi L. Cleesattle, Assistant Attorney General, Donna M. Dean and Mark A. Brown, Deputy Attorneys General, for Respondents.

---

## INTRODUCTION

Appellant Tamazi Gogadze purchased an industrial property at a tax sale in 2019.  Gogadze found that he could not get title insurance for the property, in part because the California Department of Toxic Substances Control (DTSC) held a lien, imposed in 2013, for costs associated with cleanup of the property.  Gogadze alleged that when he contacted DTSC to clear the lien, DTSC told him that he was required to enter into an operation and maintenance agreement relating to soil contamination and potential groundwater contamination.  Gogadze refused.  In December 2020, DTSC issued an order requiring Gogadze to prepare an operation and maintenance plan, monitor groundwater, and record certain deed restrictions; the order also stated that Gogadze would be liable for certain related costs.

Gogadze sued DTSC and a DTSC employee, Patrick Movlay, alleging that DTSC's refusal to clear the lien prevented Gogadze from obtaining a clear title, which prevented him from selling the property to several interested buyers.  Gogadze also alleged that Movlay told two interested buyers that any future owner of the property must enter into an operation and maintenance agreement with DTSC and pay for groundwater monitoring, which caused the buyers to pass on the property.  Gogadze alleged a single cause of action for slander of title.

DTSC demurred, arguing that the lien was nullified by the tax sale as a matter of law, Movlay's statements were not false,

2

and DTSC and Movlay were immune from liability under a variety of statutes. The trial court sustained the demurrer without leave to amend, and Gogadze appealed.

We affirm. The lien is not actionable; it was voided by the tax sale and DTSC is immune from liability. Movlay's statements to potential buyers also cannot support a slander of title cause of action; his statements accurately reflected DTSC's position, and Gogadze's disagreement with DTSC's conclusions does not render Movlay's statements false. We also find that leave to amend is not warranted; Gogadze has not met his burden to demonstrate that the defects in the complaint can be cured by amendment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Complaint and first amended complaint

On March 21, 2022, Gogadze filed a complaint against DTSC, Movlay, and two additional individual defendants. The defendants demurred to the complaint. The trial court sustained the demurrer with leave to amend. On March 3, 2023, Gogadze filed his first amended complaint (FAC), the version at issue in this appeal, against only DTSC and Movlay.

Gogadze alleged that from October 21, 2019 to April 11, 2022 he was the owner of the property at 1102 West Isabel Street in Burbank. He alleged that he bought the property for $190,000 in cash at a tax sale. Two days later, Gogadze learned that DTSC had recorded a lien on the property "in connection with the activities of a prior owner." Gogadze's title insurer told Gogadze that unless the lien was removed, a title insurance policy could not be issued.

Gogadze alleged that on November 25, 2019, he spoke with DTSC employee Movlay. Gogadze informed Movlay "that DTSC

3

has a lien against the Property, and said lien claim must be removed immediately. . . . Instead of removing the lien, however, DTSC shortly thereafter attempted to coerce [Gogadze] into entering into an Operations and Maintenance Agreement. [Gogadze] did not agree."

Gogadze alleged that he received multiple offers to buy or lease the property: a cash purchase offer of $1.1 million on January 21, 2020; an offer to lease the property for $3,042 per month in March 2020; a purchase offer of $955,000 between April 28 and May 5, 2020; a purchase offer of $700,000 on June 12, 2020; a purchase offer of $875,000 on November 17, 2020; and a purchase offer of $850,000 on January 28, 2021. Gogadze asserted that his inability to clear the title of the property prevented him from accepting any of these offers. Gogadze asserted that he contacted DTSC on March 11, 2020, for example, and "DTSC personnel stated . . . that they would only consider removing the lien if [Gogadze] entered into a 30-year agreement with DTSC and prepay it hundreds of thousands in advance so that it could monitor the status of the water in the aqueduct or aquifer underneath the Property."

Gogadze alleged that a prospective buyer, Arthur Aslabekyan, also called DTSC on an unspecified date and spoke with Movlay. Gogadze alleged, "Defendant Movlay told the potential buyer that, by law, an existing owner and any future owners, must enter into an Operation and Maintenance Agreement with DTSC and must prepay hundreds of thousands of dollars in advance to the DTSC because the water underneath the land in the aqueduct or aquifer that spreads throughout the Burbank, San Fernando Valley, and Glendale areas, was very bad quality, and in addition, that the Operations and

4

Maintenance Agreement with DTSC was required to be recorded with the Los Angeles County Recorder. This statement by Mr. Movlay to Mr. Aslabekyan, however, was false, and Movlay knew it to be false when he made it. The statement disparaged the title to [Gogadze's] Property directly to this potential buyer. Defendant Movlay made the false and disparaging statement to the buyer, Mr. Aslabekyan, with actual malice because Mr. Movlay's intent was to harm Plaintiff Gogadze and his business interests because Mr. Gogadze was refusing to enter into an Agreement with DTSC." A second prospective buyer also called Movlay, and "on information and belief," Movlay conveyed similar information to the second buyer. Gogadze alleged that "[s]ince the filing of this action, [Gogadze] was able to sell the Property at a reduced price."

Gogadze asserted a single cause of action for slander of title. Gogadze alleged that DTSC, including through Movlay's conversation with Aslabekyan, "willfully, maliciously, and without privilege or justification published false statements concerning [Gogadze's] title and rights to the property." Gogadze noted that he was alleging that Molvay committed actual fraud, and that DTSC was vicariously liable for Molvay's actions.[1] He sought compensatory damages, punitive damages, and costs.

---

[1] In his original complaint, which also included a single cause of action for slander of title, Gogadze also alleged liability based on DTSC's lien: "the continued failure and refusal by DTSC . . . to record a release or otherwise furnish a release of its LIEN recorded on December 10, 2013 . . . was done with malice and with an intent to improperly coerce Plaintiff into paying DTSC hundreds of thousands of dollars, and to enter into a long-term Operations and Maintenance Agreement, which is not required by law." This allegation was deleted from the FAC.

5

**B.    Demurrer**

DTSC and Movlay (defendants) filed a demurrer to the FAC.  (Code Civ. Proc. § 430.10, subd. (e).)  They also sought judicial notice of several documents. One document was an "imminent and substantial endangerment determination" from DTSC from April 2007.  The document stated that the property housed a metal plating shop that operated between 1959 and 1990.  The shop's waste discharge permit was revoked due to improper wastewater discharge.  From 1990 to 1991, the United States Environmental Protection Agency completed a waste removal action.  A fire then erupted at the site in November 2001, and a second waste removal action was completed in 2002. DTSC determined that the site continued to present a risk of exposure to certain chemicals: "Contamination is detected in soil, and direct contact with contaminated soil may be possible.  There is high potential that groundwater underneath the Site might be impacted through the leaching of contaminants through the on-site soil."

A September 2011 letter from DTSC to the former property owner stated, "DTSC concludes that the soil at the Site does not pose a risk for industrial/commercial use, and a No Further Action determination for the soil is appropriate, if the use is limited to commercial or industrial land use.  However, the risk is unacceptable for sensitive land use, such as single family homes, schools and day care facilities for children.  Accordingly, the implementation of a Land Use Covenant limiting the property to such usage, and signed by the property owner is required. In addition an Operation and Maintenance Agreement is required for the proper maintenance and periodic monitoring of

6

groundwater underneath the above subject site which is impacted with tetrachloroethene and trichloroethene."

Defendants also sought judicial notice of an "imminent and substantial endangerment determination and order and remedial action order" issued by DTSC, dated December 7, 2020. This order stated that Gogadze had owned the property since January 2020, and therefore he was the "responsible party." It stated that in multiple communications between November 2019 and March 2020, "DTSC informed [Gogadze] of the activities left to be completed at the Site," but Gogadze "replied that those activities are not necessary, he will not do them." The order stated that testing conducted in 2009 showed soil contamination and the potential for release into groundwater. DTSC determined that the "actual and threatened release of hazardous substances at the Site may present an imminent and substantial endangerment to the public health or welfare or to the environment," and "[r]esponse action is necessary to abate a public nuisance and/or to protect and preserve the public health." DTSC stated that Gogadze "shall immediately begin interim groundwater monitoring" with samples collected quarterly, "shall sign and record deed restrictions approved by DTSC" within 60 days, "shall prepare and submit to DTSC for approval an [operations and maintenance] plan that includes an implementation schedule," and "shall demonstrate to DTSC and maintain financial assurance for operation and maintenance and monitoring." The order also stated that Gogadze was "liable for all of DTSC's costs that have been incurred in taking response actions at the Site (including costs of overseeing response actions performed by [Gogadze]) and costs to be incurred in the future."

7

Defendants also sought judicial notice of Gogadze's verified complaint for quiet title of the same property, filed on March 17, 2021 against DTSC and several other defendants. In the quiet title complaint, Gogadze alleged that the DTSC lien was recorded in 2013 due to "costs and oversight fees incurred for cleanup of contamination" caused by a former owner. A report from a title company was attached to the complaint, showing that the lien was for $245,453.56. In the quiet title complaint, Gogadze stated, "On January 23, 2020, Defendant DTSC acknowledged and agreed that California law provides that the purchaser at a tax sale takes title free of encumbrances of any kind, except for liens held by a taxing agency," but that DTSC nevertheless failed to clear the lien. In the same action, Gogadze also sought to quiet title with respect to deeds of trust recorded in 1978 and 1981, and a judgment lien recorded in 2009. Defendants also requested judicial notice of the December 28, 2021 judgment in the quiet title action, which did not include DTSC because the lien had already been released. In Gogadze's original complaint, but not in the FAC, Gogadze alleged that DTSC recorded a release of the lien on May 27, 2021.

Defendants asserted eleven bases for their demurrer. First, defendants asserted that under the Government Claims Act, all liability against a public entity such as DTSC must be based on statute. (See Gov. Code, § 815; *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 803 ["there is no such thing as common law tort liability for public entities; a public entity is not liable for an injury '[e]xcept as otherwise provided by statute'"].) Because slander of title is a common law claim, defendants could not be liable.

8

Second, defendants asserted that the FAC failed to state facts to support a claim for slander of title. Relying on jury instructions in CACI No. 1730, defendants noted that the elements for a slander of title cause of action require the defendant to make a statement or take another action that casts doubt about the plaintiff's ownership in the property, and that the statement must be untrue because the plaintiff does in fact own the property. Defendants asserted that Gogadze's allegations did not demonstrate these elements, because none of defendants' actions challenged Gogadze's ownership of the property. The lien itself could not constitute a false statement casting doubt about Gogadze's ownership because the lien was valid when it was imposed in 2013, and Movlay's statements did not question Gogadze's ownership of the property. In addition, the quiet title action negated any alleged causation, because Gogadze "was required to clear other deeds of trust and a lien on the Site, separate and apart from DTSC's lien." Defendants noted that the quiet title judgment, entered on December 28, 2021, "does not mention the DTSC lien because that lien was released on May 27, 2021."

Third, defendants asserted that Movlay's statements could not constitute slander of title. Rather, Movlay's statements "reflected DTSC environmental compliance requirements for the Site, and did not question Plaintiff's legal right to ownership or involve title to the Site." Defendants also asserted, "All of Movlay's statements accurately reflected DTSC's environmental requirements for this Site and those requirements had been previously recorded in public DTSC decision documents years before Plaintiff purchased the Site." Defendants referenced the documents they submitted for judicial notice, including the

9

documents from 2007 and 2011 addressing the site's contaminated soil and groundwater. Defendants noted that the "environmental requirements were placed on DTSC's EnviroStor [website] and were available to anyone, including prospective purchasers." Defendants asserted, "Movlay's statements were true and did not misrepresent site conditions or the status of the environmental remediation at the Site."

Fourth, defendants argued that the litigation privilege under Civil Code section 47 barred any claim based on the DTSC lien. Defendants asserted that lien notices authorized by law, such as the 2013 judgment lien on the property at issue, are privileged, so any slander of title claim was barred.

Fifth, defendants asserted that Revenue and Taxation Code section 3712 provides that following a tax sale, "[t]he deed conveys title to the purchaser free of all encumbrances of any kind existing before the sale."[2] Thus, Gogadze's purchase at a tax sale "automatically required the county assessor to issue title to the Site free and clear of DTSC's lien." Defendants asserted that they had no duty to remove the DTSC lien.

Sixth, defendants contended that a public employee cannot be liable to a plaintiff in the absence of a special relationship in which the employee assumes a duty toward the plaintiff greater than the duty owed to another member of the general public. Defendants asserted that the FAC did not allege any facts to show that Movlay had a special relationship with Gogadze.

Seventh, defendants argued that the quiet title action demonstrated that the DTSC lien was not the cause of Gogadze's inability to sell the property. Rather, third parties had recorded

_____

[2]     Revenue and Taxation Code section 3712 includes a list of exceptions, none of which are applicable here.

10

interests in the property, and the judgment did not clear those until after the DTSC lien was removed. Defendants asserted that these "facts vitiate the theory of the FAC," and Gogadze could not prove causation.

Eighth, defendants asserted that to the extent there was any discretion about what statements to issue about environmental compliance or the lien, defendants were immune under Government Code section 820.2, which states, "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Ninth, defendants asserted that to the extent Gogadze's claim rested upon environmental restrictions or approvals, any such actions were immune under Government Code sections 818.4 and 821.1, which govern decisions in issuing permits and approvals.

Tenth, defendants argued that to the extent Gogadze's claims were based on defendants' "investigation and remediation" of the property, defendants were immune from liability under Government Code section 821.6, which provides immunity "for injury caused by . . . instituting or prosecuting any judicial or administrative proceeding."

Eleventh, defendants contended that under Government Code sections 818.8 and 822.2, they were immune from liability for any misrepresentations, unless an employee "is guilty of actual fraud, corruption or actual malice." Defendants asserted that although Gogadze stated in the FAC that Movlay acted with malice, that contention was not supported by any factual allegations.

11

## C.     Opposition

In his opposition to the demurrer Gogadze explained that he "no longer seeks to recover damages resulting from a lien that had been recorded by DTSC, nor is he alleging that the lien caused cognizable damage in the form of his resulting inability to sell the property." Gogadze stated that defendants had misconstrued the FAC in the demurrer. One of defendants' "inaccurate portrayals of the FAC" was "'[t]hat the theory of the FAC is that the DTSC lien prevented the sale of the Site until that lien was removed.' – again, that is absolutely not the 'theory' of the FAC." He argued that defendants' various defenses relating to the lien were "moot."

Gogadze stated that his "sole cause of action arises from the nonprivileged actions of" Movlay, and "the only allegation against DTSC" was "as defendant Movlay's employer." Thus, the "'Slander of Title' cause of action is based on the false statements made about the property by" Movlay to Aslabekyan, including telling Aslabekyan that any purchaser of the property would need to enter into an operation and maintenance agreement with DTSC and pay hundreds of thousands of dollars to DTSC—which was false. Gogadze noted that he alleged in the FAC that the false statements were made with actual malice. Gogadze asserted that "Movlay was motivated to make the false statements because he was upset that [Gogadze] had refused to sign an agreement," so he intended to deceive Aslabekyan with intent to harm Gogadze's business to the extent that Gogadze "would then give in and sign the agreement that was then being proffered by DTSC." Gogadze argued that these constituted "ample facts" to state a claim against a public employee and against DTSC as the employer.

Gogadze asserted that his single cause of action was based on liability under Government Code section 815.2, which allows a public entity to be held liable for injury caused by an employee in the scope of employment. He asserted that defendants' various other claims of immunity did not apply. Gogadze also asserted that defendants defined slander of title too narrowly, because the cause of action can include "whether the defendant could reasonably foresee that their conduct might deter a third party from purchasing or leasing the property."

Gogadze objected to defendants' request for judicial notice, and asserted that defendants could not rely on their judicially noticed documents to assert that Movlay's statements were true. He argued that judicial notice does not allow a court to accept the truth of the matters stated in a document, nor could the court determine whether Movlay's statements in 2020 were true based on a 2011 document. Gogadze requested leave to amend if the court sustained the demurrer, but did not propose any specific amendments.

Defendants filed a reply in support of their demurrer.

**D.    Ruling on demurrer**

There is no reporter's transcript from the demurrer hearing. In a written ruling, the trial court sustained the demurrer without leave to amend. The court granted defendants' request for judicial notice, noting that it was not judicially noticing the truth of any factual findings within the documents.

The court found that Gogadze failed to state a cause of action for slander of title because "Movlay's statements regarding Gogadze's title were not false." The court noted that slander of title, by definition, "concerns <u>title</u> to property." The court reasoned that Movlay's alleged statements about a DTSC

13

agreement and environmental monitoring were not about the title to the property. The court noted that "the property is in fact encumbered by a recorded deed restriction regarding use of the property (commercial or industrial only), and an Operations and Maintenance Agreement, which is publicly available on DTSC's 'EnviroStor' website." Because Movlay's statements were not false, Gogadze had not alleged facts to state a cause of action for slander of title.

The court also noted that "to the extent slander of title is based on the recorded judgment lien it is absolutely privileged." The court accepted that Gogadze had withdrawn this theory: "the Court accepts Gogadze's concession that this argument is moot, since he is no longer seeking relief based on the judgment lien." The court further noted that "the immunities in sections 818.8 and 822.2 do not apply to slander of title."

The court stated that because "[i]t does not appear that amendment can cure these defects," leave to amend was denied. The court noted that at oral argument, Gogadze requested permission to amend his complaint to include a cause of action for trade libel. The court rejected this request, explaining that "a claim for trade libel still requires that the defendant has made false statements concerning a plaintiff's property. As noted, Gogadze cannot establish the element of falsity."

The court entered a judgment of dismissal in favor of defendants. Gogadze timely appealed.

## DISCUSSION

Gogadze asserts that the trial court erred by sustaining the demurrer without leave to amend. He asserts that both the lien and Movlay's statements support a cause of action for slander of title. He contends that in the alternative, he should be allowed to

14

amend the complaint.  Defendants assert that the demurrer was properly sustained, and leave to amend was appropriately denied.

"The function of a demurrer is to test whether, as a matter of law, the facts alleged in the complaint state a cause of action under any legal theory." (*Stiles v. Kia Motors America, Inc.* (2024) 101 Cal.App.5th 913, 917.)  "'In reviewing a judgment of dismissal after a demurrer is sustained without leave to amend, we assume the truth of all properly pleaded facts.  We examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory regardless of the label attached to a cause of action.  [Citation.]  We do not assume the truth of contentions, deductions, or conclusions of fact or law, and may disregard allegations that are contrary to the law or to a fact that may be judicially noticed.'  [Citation.]  We review de novo a trial court's ruling on a demurrer and examine the operative complaint to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*Summerfield v. City of Inglewood* (2023) 96 Cal.App.5th 983, 992.)

## A.    Slander of title

"Slander of title is a false and unprivileged disparagement, oral or written, of the title to real or personal property." (5 Witkin, Summary of Cal. Law (11th ed. 2024) Torts, § 747.)  "To state a claim for slander of title, a plaintiff must allege '(1) a publication, (2) which is without privilege or justification,' (3) which is false, and (4) which 'causes direct and immediate pecuniary loss.'" (*Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1336.)  "If the publication is reasonably understood to cast doubt upon the existence or extent of another's

15

interest in land, it is disparaging to the latter's title." (*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1030.)

    1.    *The lien[3]*

Gogadze asserts that "the lien was disparaging because it prevented Gogadze from obtaining title insurance to the property . . . and because it clouded title by misrepresenting the extent of his interest in the land."

Defendants assert that DTSC cannot be liable for a common law cause of action such as slander of title. "Under the Government Claims Act (Gov. Code, § 810 et seq.), there is no common law tort liability for public entities in California; instead, such liability must be based on statute." (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897; see also Gov. Code, § 815, subd. (a) ["Except otherwise provided by statute," a "public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person"].) Slander of title is not a statutory claim, it "is a form of the separate common law tort of disparagement, also sometimes referred to as injurious falsehood." (*Finch Aerospace Corp. v. City of San Diego* (2017) 8 Cal.App.5th 1248, 1253.) Gogadze does not

_____

[3]    Gogadze told the court below that he was no longer pursuing any recovery relating to the lien. Gogadze (and his new counsel on appeal) now assert that this claim was not waived. Although a party generally is not permitted to change its position on appeal or raise new issues not presented for decision in the trial court, an appellant challenging a general demurrer may change his or her legal theory on appeal. (*Bocanegra v. Jakubowski* (2015) 241 Cal.App.4th 848, 857.) Because the lien issue has been fully briefed by both parties, we consider it.

address this argument in his briefing. We agree that DTSC is immune from liability under the Government Claims Act.

Moreover, the FAC does not allege facts supporting such a cause of action as it relates to the lien. Nothing in the record suggests the lien was invalid when it was first recorded in 2013. The lien was to recoup costs and oversight fees incurred for cleanup of contamination caused by the former owner. The lien was not the basis for any ongoing environmental restrictions on the property.

The parties agree the lien was rendered invalid by the tax sale. As noted above, Revenue and Taxation Code section 3712 provides that following a tax sale, "[t]he deed conveys title to the purchaser free of all encumbrances of any kind existing before the sale," subject to exceptions not at issue in this case. Thus, to the extent that anyone—Gogadze, DTSC, Movlay, Gogadze's title insurer, or any potential buyer—believed the lien was valid or enforceable after the tax sale, that belief was erroneous.

The question then becomes whether a publication, accurate when it was recorded, can support a claim for slander of title because later events rendered it invalid. In other words, does DTSC's failure to remove the lien after it was invalidated by the tax sale constitute (1) a publication, (2) without privilege or justification, (3) which is false for purposes of a slander of title cause of action? Gogadze cites no support for this proposition, and we have found none. Gogadze relies on *Seeley v. Seymour* (1987) 190 Cal.App.3d 844, 857, in which the court stated, "The recordation of an instrument facially valid but without underlying merit will, of course, give rise to an action for slander of title." But the instrument in that case was always void—it did not become void due to later events. (*Id*. at pp. 855-856.) Gogadze

17

also cites *Van Horn v. Department of Toxic Substances Control* (2014) 231 Cal.App.4th 1287 (*Van Horn*), in which a landowner alleged that the procedure DTSC used to place a lien on her property for hazardous substance alleviation pursuant to California's "Superfund" statute violated her due process rights. Gogadze cites *Van Horn* for its statement that such a lien, "which clouds title, impairs the ability to alienate the property, taints credit ratings, and reduces the chance of subsequently financing the property—significantly affects a private property interest." (*Id*. at p. 1297.) Again, the lien in *Van Horn* did not become invalid due to later events. Thus, we find no legal support for Gogadze's contention that the lien "constituted a continuing publication" for purposes of a slander of title claim.

Gogadze asserts that DTSC improperly associated him with the lien after he purchased the property, but he does so only by conflating the lien with the environmental monitoring restrictions. For example, Gogadze states in his opening brief that when he refused to enter into a voluntary operation and maintenance agreement with DTSC, "DTSC published an order on its website finding Gogadze liable under the (invalid) lien and concluding that an agreement was mandatory." But the published order Gogadze cites—the 2020 environmental compliance order—makes no mention of the lien. Rather, it notes that Gogadze is the "responsible party" because he is the property owner, and states that Gogadze is required to prepare and submit a proposed operation and maintenance plan to DTSC. The document does not connect Gogadze with the lien.

In short, no legal authority supports a finding that for purposes of a slander of title cause of action, a lien, which was legal and accurate when recorded, becomes an unprivileged, false

publication if later events render it invalid. Gogadze therefore has not alleged facts sufficient to support a cause of action for slander of title as it relates to the lien.

2. *Movlay's statements*

Gogadze alleged that Movlay told Aslabekyan and another potential buyer "that, by law, an existing owner and any future owners, must enter into an Operation and Maintenance Agreement with DTSC and must prepay hundreds of thousands of dollars in advance to the DTSC because the water underneath the land in the aqueduct or aquifer that spreads throughout the Burbank, San Fernando Valley, and Glendale areas, was very bad quality, and in addition, that the Operations and Maintenance Agreement with DTSC was required to be recorded with the Los Angeles County Recorder."  Slander of title "may be committed through the use of oral statements." (*Seeley v. Seymour, supra,* 190 Cal.App.3d at p. 858.)

Movlay does not have blanket immunity under the Government Claims Act. "When it comes to tort suits against public employees, ""the rule is liability, immunity is the exception.""" (*Freeny v. City of San Buenaventura* (2013) 216 Cal.App.4th 1333, 1341.)

The trial court found that Movlay's statements accurately reflected DTSC's position.  The trial court stated, "Based on the judicially noticed documents, including documents evidencing DTSC's orders, it is apparent that the property is in fact encumbered by a recorded deed restriction regarding use of the property (commercial or industrial only), and an Operations and Maintenance Agreement, which is publicly available on DTSC's 'EnviroStor' website."

Defendants assert the trial court is correct: "Movlay's alleged improper statements were true and did not misrepresent the property's conditions or the status of the environmental remediation at the property. Movlay's statements merely conveyed the environmental compliance requirements for the site." Indeed, the 2011 letter from DTSC to the property's former owner stated that a land use covenant was required, which would limit the use of the property, and an operation and maintenance agreement was required for groundwater monitoring. The 2020 order to Gogadze stated that groundwater monitoring was required, Gogadze was required to sign and record deed restrictions, Gogadze was required to develop an operations and maintenance plan, and Gogadze was financially liable for DTSC's costs and ongoing monitoring. Gogadze admits in his appellate briefing, "[I]t is uncontested that DTSC demanded Gogadze sign a Land Use Covenant and create an Operations and Maintenance Agreement."

Gogadze argues the trial court erred by judicially noticing the *truth* of the matters within the DTSC documents, rather than judicially noticing only the existence of the documents. (See, e.g., *Lent v. California Coastal Com.* (2021) 62 Cal.App.5th 812, 854 ["'While we may take judicial notice of . . . official acts of state agencies [citation], the truth of matters asserted in such documents is not subject to judicial notice.'"].) We find no error. The trial court noted that it was taking judicial notice of the orders issued by DTSC under Evidence Code section 452, subdivision (c), which allows judicial notice of the "[o]fficial acts of the legislative, executive, and judicial departments" of any state. The trial court stated that it was taking judicial notice "not as to any factual findings contained in the orders themselves

20

but as to the legal effect of the orders."  "Where, as here, judicial notice is requested of a *legally operative* document—like a contract—the court may take notice not only of the fact of the document and its recording or publication, but also facts that clearly derive from its *legal effect*." (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 754 [emphasis in original].)[4]

It was appropriate to judicially notice that Movlay accurately conveyed DTSC's position to the potential buyers. Gogadze's disagreement with some of DTSC's factual findings does not affect the accuracy of Movlay's statements. Thus, the slander of title cause of action in the FAC did not state facts to support a claim against Movlay in that his statements were not "false" as they pertained to Gogadze's interest in the property, and the statements did not lack "justification." The demurrer was appropriately sustained as to the cause of action against Movlay.

## B.    Leave to amend

Gogadze urges us to "find that leave to amend is appropriate based on (1) new facts and (2) several new theories." Defendants assert that leave to amend should be denied.

---

[4]    With his reply brief on appeal, Gogadze for the first time requests judicial notice of multiple documents from the EnviroStor website, stating that these additional documents "demonstrate the . . . lack of notice or adversarial process regarding any of [Gogadze's] other supposed legal obligations, and [defendants'] knowledge that their orders lacked merit." These documents are not necessary to the resolution of this case, and we deny Gogadze's request for judicial notice.  (Cal. Rules of Court, rule 8.252; *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6.)

"If the demurrer was sustained without leave to amend, we consider whether there is a 'reasonable possibility' that the defect in the complaint could be cured by amendment. [Citation.] The burden is on plaintiffs to prove that amendment could cure the defect." (*King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1050.) "'The appellant has the burden to identify specific facts showing the complaint can be amended to state a viable cause of action. [Citation.] An appellant can meet this burden by identifying new facts or theories on appeal." (*Roe v. Hesperia Unified School District* (2022) 85 Cal.App.5th 13, 24; see also Code Civ. Proc., § 472c.)

Gogadze's proposed new facts focus on the validity of the lien, the validity of DTSC's findings before Gogadze purchased the property, DTSC's findings in the 2020 order, and the process by which the 2020 order was issued. For example, Gogadze proposes that he can allege facts such as, "The lien was imposed unilaterally, and its validity has never been litigated"; "The statute of limitations on the lien expired years ago and the DTSC was aware of its expiration"; "DTSC retracted their [*sic*] demands for cost recovery" after Gogadze's counsel pointed out that the statute of limitations had expired; "DTSC did not afford Gogadze appropriate hearings to challenge their [*sic*] determinations on either the lien or the operation agreement"[5]; and "The lack of opportunity to contest the DTSC's factual or legal findings constituted a violation of Gogadze's due process rights."

Gogadze contends these facts would support a revised cause of action for slander of title. We disagree for the reasons

---

[5] Although Gogadze references an operation agreement here, he also asserts that "no current or former owner of the property has . . . entered into an operation and maintenance agreement."

discussed above: DTSC itself cannot be not liable for a common law tort under the Government Claims Act, the lien is not actionable because it was imposed years before Gogadze purchased the property, and the lien became invalid after the tax sale. Gogadze's revised facts say nothing about Movlay's involvement. Gogadze's new alleged facts therefore do not support a cause of action for slander of title.

Gogadze also asserts that these facts would support causes of action for trade libel and intentional interference with prospective economic advantage. Again, however, DTSC cannot be liable under the Government Claims Act. A public entity may be held liable for trade libel or intentional interference with prospective economic advantage if that liability is based on vicarious liability for the conduct of an employee acting within the scope of employment. (*City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 377-378.) However, a trade libel claim requires the plaintiff to prove that a defendant's statement was false (see, e.g., *ZF Micro Solutions, Inc. v. TAT Capital Partners, Ltd.* (2022) 82 Cal.App.5th 992, 1002 fn. 5), and an intentional interference with prospective economic advantage claim requires the plaintiff to demonstrate "intentionally wrongful acts designed to disrupt" the plaintiff's economic relationship with a third party (*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.* (2017) 2 Cal.5th 505, 512). As discussed above, Movlay's statements were not false or wrongful; they accurately conveyed DTSC's position.

Gogadze argues he can also assert causes of action under 42 U.S.C. section 1983 (section 1983) for violations of due process and for takings. "'To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and

23

laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" (*Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1472.) Gogadze states that his "proposed 42 U.S.C. § 1983 claim is predicated on the DTSC's imposition of the lien without due process of law." Gogadze proposes that he can also assert a takings claim under section 1983 because "DTSC's regulatory demands and abuse of procedure in refusing to release the lien constituted a taking of property without due process of law," and "DTSC could not compel Gogadze to enter into an agreement without affording him just compensation."

Defendants assert that DTSC cannot be held liable under section 1983. (See, e.g., *McAllister v. Los Angeles Unified School Dist.* (2013) 216 Cal.App.4th 1198, 1207 ["a state, an entity acting as an 'arm of the state,' or a state official sued in his official capacity may not be considered a 'person' who may be liable under section 1983"].) Gogadze asserts that such an argument elevates "form over substance." We agree with defendants that DTSC, a state agency, cannot be liable under section 1983.[6] We decline to consider the new proposed grounds for liability asserted for the first time in Gogadze's reply brief on appeal. (See, e.g., *Save the Agoura Cornell Knoll v. City of Agoura Hills* (2020) 46 Cal.App.5th 665, 679 ["new legal theories raised for the first time in a reply brief generally will not be considered unless good cause is shown for the failure to present them earlier"].)

Moreover, as defendants correctly point out, "Gogadze purchased the Site after it was already subject to environmental

---

[6] Gogadze argues that *Van Horn, supra*, 231 Cal.App.4th 1287, "establishes that plaintiffs may bring such an action," but *Van Horn* did not involve section 1983.

24

restrictions.  The Site is no different than when Gogadze purchased it," and therefore there has been no taking or inverse condemnation.  (See, e.g., *California Building Industry Assn. v. City of San Jose* (2015) 61 Cal.4th 435, 462 ["As a general matter, so long as a land use regulation does not constitute a physical taking or deprive a property owner of all viable economic use of the property, such a restriction does not violate the takings clause insofar as it governs a property owner's future use of his or her property"]; *Simple Avo Paradise Ranch, LLC v. Southern California Edison Company* (2024) 102 Cal.App.5th 281, 289 [to state a claim for inverse condemnation, a plaintiff must allege that a public entity has taken or damaged their property for a public use].)  We agree that Gogadze has failed to demonstrate that leave to amend is warranted.

## DISPOSITION

The judgment is affirmed.  Defendants are entitled to recover their costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, ACTING P. J.

We concur:



MORI, J.



ZUKIN, J.


25